[Crim. No. 21175. Second Dist., Div. One. Feb. 9, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM CHAVEZ LANDA, Defendant and Appellant.

**COUNSEL**

David C. Marcus for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, William R. Pounders and Bernardine M. Baldwin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Defendant was charged in count I with possession for sale of a restricted dangerous drug—amphetamine (§ 11911, Health & Saf. Code), count II with possession of a restricted dangerous drug—seconal (§ 11910, Health & Saf. Code), count III with carrying a concealed weapon (§ 12025, Pen. Code) and count IV with carrying a loaded firearm in a vehicle (§ 12031, subd. (a), Pen. Code). Motion pursuant to section 1538.5, Penal Code, was submitted on the reporter's transcript of the testimony taken at the preliminary hearing, and denied; thereafter the cause as to count I was submitted to the trial court on the transcript. Defendant was found guilty as charged in count I; counts II, III and IV were dismissed in the furtherance of justice. He appeals from the judgment.

Around 6:30 p.m. Deputies Holmes and Hearn observed that a right taillight was out on defendant's car when he made a right turn off of Olympic Boulevard, and pulled him over to a stop. Deputy Holmes approached him, advised him of the violation and asked him for his driver's license and registration which he produced; he returned to the patrol car and by police radio made a "want check"; he was advised that there was an outstanding traffic warrant for defendant's arrest and was supplied with the name William Chavez Landa and the violation (8939 LAMC); he then asked defendant to step out of his car, arrested him "for the warrant" and conducted a pat-down. Thereafter Deputy Holmes "began an inventory to search the vehicle, prior to storage, using our CHP 180 form"; he inventoried the outside, then entered the vehicle and observed on the driver's seat a .22 caliber bullet and a brown paper grocery-like bag partially concealed in the center armrest; he took the bag and examined its contents finding 1,000 amphetamine tablets; then advised defendant of the additional charge of possession for sale of drugs. The deputy returned

to the vehicle and continued his search finding a loaded .38 caliber revolver in the glove compartment and various items in the trunk containing a large number of amphetamine tablets and seconal capsules, a fully automatic 9-millimeter caliber rifle, clip containing 9-millimeter shells and a box of .38 caliber shells. Upon booking defendant at the station, Deputy Hearn searched him and found in his pants pocket an envelope containing 5 amphetamine tablets, 23 seconal capsules and one 9-millimeter bullet.

Inasmuch as the existence of a valid warrant for defendant's arrest was challenged in the court below, the prosecution established the following. Before defendant's arrest, Deputy Holmes requested a "want check" over his police radio calling the sheriff's radio room to the automated warrant system; he was advised that defendant had an outstanding traffic warrant and was given the name William Chavez Landa, the violation (8939 LAMC) and the bail ($10), then arrested defendant "for the warrant"; but because defendant told him the fine had been paid, he again contacted the radio room which recontacted his station; when the warrant abstract arrived at his station it contacted him on another frequency and read the warrant to him "word for word . . . in that way I am sure that if there were two people for instance that had the same name, the description and the date of birth, and so on, would also correspond. At this point everything they read to me corresponded to [defendant]. I was led to believe that he hadn't paid the warrant, hadn't paid the fine . . ."; as defendant was being booked at the station Deputy Holmes saw, read and made a photostatic copy of the original abstract of warrant; the original was sent with defendant when transported downtown and the copy was received in evidence (exh. A); exhibit A bears the name of defendant, warrant number (8573786W), date of issuance, 3-3-70, by East Los Angeles Municipal Court, Division 63, and the offense charged (89.39). The prosecution then offered certified copy of municipal court complaint against William Chavez Landa, case No. 8573786W, containing a direction that a warrant issue for his arrest by the clerk (exh. 9); the copy of abstract of warrant (exh. A) bears the same information. It also offered photostatic copy of abstract of warrant (exh. 10 for identification) identical with exhibit A. Deputy Henry testified that after a warrant is issued it is forwarded to and filed with the agency—the LAPD or the sheriff's office; when it is served the original is returned to the court of issuance and becomes a public record; an abstract of warrant is a copy of all the face material on the warrant and is issued in the regular course of business from the agency holding the warrant to the agency making the arrest. Deputy Henry also saw the original abstract of warrant for defendant's arrest which is in the East Los Angeles sheriff's station in the original file jacket.

■ The testimony of Deputies Holmes and Henry was adequate foundation for receipt in evidence of the photostatic copy of the abstract of warrant. We agree with the court below that exhibit A was in fact an abstract of the original warrant, which is a public record, and was clearly sufficient to show the legality of the arrest on an outstanding traffic warrant based on the existence of a valid warrant within the meaning of *People* v. *Wohlleben,* 261 Cal.App.2d 461, 465 [67 Cal.Rptr. 826]. *(Hewitt* v. *Superior Court,* 5 Cal.App.3d 923, 929-930 [85 Cal.Rptr. 493].) The arrest on the warrant having been lawful; defendant properly was taken to the station for booking, and the booking search of his person made at that time was reasonable *(People* v. *Wohlleben, supra,* 261 Cal.App.2d 461, 462): the five amphetamine tablets and 23 seconal capsules found in an envelope in his pants pocket were lawfully seized.

■ However, the drugs, bullets and firearms found in defendant's vehicle should have been suppressed as having been seized as the result of an unlawful search. We conclude under the circumstances of this case that the deputies' custodial care of defendant's vehicle after his arrest was neither necessary nor proper. The People's burden of establishing the necessity for the taking and the inventory *(People* v. *Nagel,* 17 Cal.App.3d 492, 497 [95 Cal.Rptr. 129]; *Virgil* v. *Superior Court,* 268 Cal.App.2d 127, 132 [73 Cal.Rptr. 793]) was not met. While police have authority to impound a vehicle under proper circumstances pursuant to section 22651, subdivision (h), Vehicle Code, and defendant was alone in his car, neither his arrest on the warrant nor the circumstances surrounding the original detention and subsequent arrest had any connection with the necessity for police custodial care of his vehicle. Defendant had turned from Olympic Boulevard onto a side street where he was stopped. Nothing in the record shows that the car was stolen or subject to forfeiture, or illegally parked and could not have been locked and left unattended. The situation would have been no different had defendant himself voluntarily parked the vehicle, locked and left it. *(People* v. *Nagel, supra,* 17 Cal.App.3d 492, 498.)

It is conceded by the People that the deputy had no search warrant, thus it was their burden to demonstrate justification of the police conduct. *(People* v. *Superior Court [Simon]* 7 Cal.3d 186, 192 [101 Cal.Rptr. 837, 496 P.2d 1205]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) Since we have concluded the police custody of defendant's vehicle under the circumstances to be improper, there was no legal justification for taking what the Attorney General asserts was an official inventory of its contents. On the state of the record, Deputy Holmes' examination of the interior of the vehicle amounts to nothing more than a search, the validity of which cannot be justified as (1) incident to defendant's lawful

arrest on the warrant because such arrest does not alone provide probable cause to search a vehicle (*People* v. *Superior Court* [*Kiefer*] 3 Cal.3d 807, 813-817 [91 Cal.Rptr. 729, 498 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Koehn,* 25 Cal.App.3d 799, 802 [102 Cal.Rptr. 102]); (2) based on probable cause to believe the vehicle contained contraband or firearms (*People* v. *McReynolds* (1973) 8 Cal.3d 655 [105 Cal.Rptr. 691, 504 P.2d 915]; *Gallik* v. *Superior Court,* 5 Cal.3d 855, 861 [97 Cal.Rptr. 693, 489 P.2d 573]; *People* v. *Superior Court* [*Kiefer*], *supra,* 3 Cal.3d 807, 816; or (3) by the peculiar nature of the police custody involved; and there were no exigent circumstances which made the search reasonable and necessary. (*Mozzetti* v. *Superior Court,* 4 Cal.3d 699, 712 [94 Cal.Rptr. 412, 484 P.2d 84].) Nothing in the record suggests any furtive conduct on the part of defendant or that he was attempting to hide anything or avoid police; or that he had committed any offense other than the equipment violation for which he was stopped and the traffic violation contained in the warrant; or that the deputies had any suspicion that defendant ever had any connection with firearms or narcotics, or that the vehicle contained a gun or contraband. To the contrary, Deputy Holmes testified that he had no reason to believe defendant possessed a firearm or contraband or was in any manner involved in any narcotics activity. Moreover there is no evidence that the deputy saw either the bullet or the brown paper bag on the front seat before he entered the vehicle or, after entering defendant's car, suspected that it contained either a firearm or narcotics. It was the entry into the vehicle and the search thereof that brought to light both the bullet and the bag partially concealed in the armrest.

Even had the protective measures taken by Deputy Holmes in connection with defendant's vehicle been valid, he had no right to open the brown paper bag and seize the contents. ▆▆ While police "may take note of any personal property in plain sight within the automobile being taken into custody," it is clear in *Mozzetti* v. *Superior Court, supra,* 4 Cal.3d 699, that only objects plainly visible without probing may be listed in the inventory or other police report, and a search into a closed suitcase or package or bag constitutes an unreasonable search (p. 707). The record supports a finding that the paper bag was in "plain sight" only after Deputy Holmes entered the vehicle and saw it partially concealed in the armrest, and that even then the contents of the bag were not exposed to open view and did not come under the "plain sight" rule. The evidence supports no legitimate inference that the deputy could see through the paper bag, the bag was open, the contents were exposed or could be seen without opening the bag, there were any impressions or anything else on the exterior of the bag that would indicate the nature of the contents, that Deputy Holmes

knew or even suspected that the bag, an ordinary grocery-like sack, contained contraband (*Remers* v. *Superior Court,* 2 Cal.3d 659, 665 [87 Cal.Rptr. 202, 470 P.2d 11]; see also *People* v. *Marshall,* 69 Cal.2d 51, 56-57 [69 Cal.Rptr. 585, 442 P.2d 665]), or that he did not in fact open the paper bag and look in to examine the contents.

Nor can we conclude, as urged by the Attorney General, that the totality of the circumstances may have given the deputy probable cause to search the bag since the bullet was suggestive of the presence of a loaded gun concealed therein. Deputy Holmes gave no testimony to the effect that at any time he suspected that the bag might contain a gun, even after observing the bullet on the seat. In the absence of such evidence, we cannot justify the search of the bag on the theory propounded for the first time on appeal and which at no time passed through the mind of the deputy. (*People* v. *Superior Court* [*Simon*] 7 Cal.3d 186, 198-199 [101 Cal.Rptr. 837, 496 P.2d 1205].)

For the foregoing reasons we conclude that the motion pursuant to section 1538.5, Penal Code, was properly denied as to the five amphetamine tablets, 23 seconal capsules and 9-millimeter bullet found on defendant during a booking search at the station after his arrest on the warrant; and that said motion should have been granted as to the amphetamine tablets, seconal capsules and firearms found in defendant's vehicle. Inasmuch as count I on which defendant was convicted was based on the amphetamine tablets found in the vehicle, the judgment is reversed.

Wood, P. J., and Thompson, J., concurred.