156 N.J. Super. 347 (1978)
383 A.2d 1174
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER McDANIEL, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1978.
Decided February 24, 1978.
*350 Before Judges LYNCH, BISCHOFF and KOLE.
Mr. Murray Honig, designated attorney, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Ms. Jane H. Marter, Assistant Prosecutor, argued the cause for respondent (Mr. Leonard D. Ronco, Acting Essex County Prosecutor, attorney; Mr. Joseph P. Lordi, former Prosecutor, and Mr. Michael N. Pedicini, Assistant Prosecutor, of counsel).
PER CURIAM.
Defendant appeals from his conviction for possession of a controlled dangerous substance (heroin) with intent to distribute contrary to N.J.S.A. 24:21-19a(1).[1]
*351 Prior to trial defendant had moved to suppress certain evidence seized from a car owned by the mother of his codefendant, William J. Super, and in which defendant was a passenger. Also defendant sought to suppress evidence seized from his person after the vehicle had been stopped by police. The motion was denied. The propriety of said denial is the sole issue on appeal.
On July 18, 1975, at about 5:00 a.m., Newark Police Sergeant Raymond McGuinness and Patrolman Daniel Helber were on routine patrol, traveling east on 14th Avenue in their squad car. While passing through the intersection of 14th Avenue and Bergen Street the officers noticed a white, 1966 Chevrolet come to an "erratic stop" at the light on Bergen Street with a "loud screech of brakes." The officers then made a "U-turn" and noticed that the vehicle had turned onto 14th Avenue, traveling eastward in the westbound lane.
At this point they stopped the vehicle and Patrolman Helber asked the driver, William Super, to produce his license, registration and insurance card. Sergeant McGuinness stood near the rear of the car. The registration showed that the car belonged to Super's mother. A "routine check" of the license plate number and Super's driver's license revealed that Super was "wanted on a bench warrant." Super was then arrested and asked the officers if defendant McDaniel could take the car. However, the officers decided "to take the whole thing down to the Precinct" and defendant "requested to go along to take the vehicle."
It was decided that Sergeant McGuinness would drive Super and defendant to the precinct station in the squad car and that Patrolman Helber would drive Super's car. "For protection" Helber frisked both men and discovered a "bulge" in defendant's left trouser pocket. Defendant pulled the object from his pocket at the request of Patrolman *352 Helber and it appeared to be a ball of "tissue paper" containing nine, empty glassine envelopes. Defendant explained that his sister found the envelopes somewhere and he had taken them from her. Although defendant had not been arrested at this point, "[a]fter finding the glassine bags [the officers] brought him down [to the precinct] so that [they] could further check him" and release the car to him. Sergeant McGuinness noted that he could have released the car to defendant on the spot, but decided to bring the car down to the station "rather than tie up the air."
After the vehicles were brought to the precinct Patrolman Helber and another "went out to make a search of the car * * * for valuables or any contraband * * *." Helber explained further that the search was "partially for valuables" because the officers did not want to be held liable for any personal property which the car might have contained. During the course of the search the officers discovered 47 glassine bags of heroin wedged behind the back of the front seat. None was visible upon a "plain view" of the interior of the car. After the contraband was found, the officers left the vehicle and placed Super and defendant under arrest. At trial they discovered bags of heroin and the empty glassine envelopes were introduced into evidence.
The theory advanced by the State below, and that relied upon by the trial judge in denying defendant's suppression motion, was that the search and seizure at issue were undertaken pursuant to a "routine check or inventory" and thus were not violative of defendant's Fourth Amendment rights.[2] The State on appeal advances an alternative justification, as well: i.e., the search and seizure were justified by "probable cause" and "exigent circumstances."

*353 I

Inventory search
Implicit in the trial judge's holding herein are two "findings," each representing a mixed question of law and fact: (a) the officers were justified in impounding the vehicle in which defendant was a passenger and (b) the subsequent "search" was not a "pretext concealing an investigatory police motive." South Dakota v. Opperman, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976). In Opperman Chief Justice Burger, expressing the view of five members of the court, upheld the inventory of a vehicle lawfully impounded by police for violations of municipal parking ordinances. The inventory, undertaken pursuant to "standard police procedures," revealed a bag of marijuana located in the glove compartment.
Justice Burger, after noting that the police are often justified in taking custody of vehicles "[i]n the interests of public safety," declared that an inventory of such vehicles is also justified in order to protect the owner's property, to protect the police against claims over lost or stolen property and to protect the police from "potential danger." 428 U.S. at 368-369, 96 S.Ct. 3092. He stated that "this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." Id. at 373, 96 S.Ct. at 3098.
And, in relating the rule to the facts in that case, he declared:
The Vermillion police were indisputably engaged in a caretaking search of a lawfully impounded automobile. Cf. United States v. Lawson, 487 F.2d 468, 471 (CA8 1973). The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in Cady, there is no suggestion *354 whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive. [at 375-376, 96 S.Ct. at 3099; emphasis supplied]
Justice Powell, in a concurring opinion, expanded on the rationale underlying the constitutional validity of a warrantless inventory search:
Inventory searches * * * are not conducted in order to discover evidence of crime. The officer does not make a discretionary determination to search based on a judgment that certain conditions are present. Inventory searches are conducted in accordance with established police department rules or policy and occur whenever an automobile is seized. There are thus no special facts for a neutral magistrate to evaluate. [at 383, 96 S.Ct. 3092.]
In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the Supreme Court upheld the inventory of a vehicle impounded under the authority of a state forfeiture statute, where the owner had been arrested on a narcotics charge. The court held that it would be "unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." 386 U.S. at 61-62, 87 S.Ct. at 791. Similarly, in Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed. 2d 706 (1973), it was held that the search of a vehicle thought to contain a police officer's revolver was not unreasonable where police exercised a "form of custody" over the vehicle by towing it off the shoulder of a highway. The court noted that the vehicle was disabled and the operator, being intoxicated (and later comatose), "could not make arrangements to have the vehicle towed and stored." 413 U.S. at 443, 93 S.Ct. at 2529. See also, Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
Thus, in finding that a valid inventory search has taken place, the court must determine whether there existed "reasonable and proper justification" for the impoundment *355 of the vehicle in the first instance. State v. Montague, 73 Wash.2d 381, 438 P.2d 571, 574 (Sup. Ct. 1968); see State v. Jones, 122 N.J. Super. 585, 600 (Cty. Ct. 1973); People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 950, 272 N.E. 2d 464, 468 (Ct. App. 1971). Reasonable justification may be had through authority granted by statute or by the circumstances attending the initial stop itself. See, e.g., State v. Singleton, 9 Wash. App. 327, 511 P.2d 1396, 1399 (App. Ct. 1973); cf. State v. Slockbower, 145 N.J. Super. 480, 485 (App. Div. 1976), motion for leave to appeal granted 74 N.J. 255 (1977). "If impoundment is not necessary, then the concomitant search is unreasonable." State v. Goodrich, Minn., 256 N.W.2d 506, 510 (Sup. Ct. 1977). Tolbert v. State, 348 So.2d 623 (Fla. App. Ct. 1977); Granville v. State, 348 So.2d 641 (Fla. App. Ct. 1977); State v. Hardman, 17 Wash. App. 910, 567 P.2d 238 (1977); State v. Bales, 15 Wash. App. 834, 552 P.2d 688 (App. Ct. 1976); People v. Landa, 30 Cal. App.3d 487, 106 Cal. Rptr. 329 (D. Ct. App. 1973); cf. Commonwealth v. Randle, Pa. Super., 375 A.2d 76 (Super. Ct. 1977); Commonwealth v. Brandt, 244 Pa. Super. 154, 366 A. 2d 1238 (Super. Ct. 1976). Requiring that the decision to impound a vehicle must be either reasonable under the circumstances or made pursuant to statutory authorization in order to sustain an inventory search is warranted by the Supreme Court's insistence that police have "lawful custody" of the vehicles in such cases. (Emphasis added). See South Dakota v. Opperman, supra.
In State v. Slockbower, supra, the Appellate Division upheld the inventory search of a car impounded after police arrested the operator for driving while on the revoked list. The trial judge had suppressed the results of the inventory, noting that the police had "no valid reason" to impound the car, since they could have simply locked it and left it on the street. In reversing, the Appellate Division held: *356 Having removed defendant from the car and assumed control over it, they merely complied with police regulations when they impounded and inventoried the car. Furthermore, N.J.S.A. 39:4-136 would appear to permit the police to remove and store a motor vehicle which cannot be moved by the operator, or is improperly parked and left unattended upon a roadway. Nor are the police circumscribed by express statutory authority to impound motor vehicles. The inherent power of the police to impound motor vehicles may arise in a myriad of factual situations too numerous to attempt to define. [145 N.J. Super. at 485]
In a case such as that at bar there is no general, statutory authority which gives police the right to impound a vehicle stopped on the street. See generally State v. Jones, supra. Cf. State v. Hock, 54 N.J. 526, 533-534 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). Here  unlike Slockbower  N.J.S.A. 39:4-136 has no real relevance since defendant or his codefendant could have moved the vehicle to a lawful parking area and locked it. Also, police here had the alternative of turning the car over to defendant McDaniel. Slockbower would seem to indicate that merely because the police did not avail themselves of this opportunity, the impoundment is not thereby rendered unreasonable. However, Slockbower is distinguishable. There, police only had the option of either impounding the car or leaving it on the street, exposing it to possible theft. 145 N.J. Super. at 486. Here, by contrast, police had a third alternative: turning the vehicle over to defendant in accordance with the operator's wishes. Defendant was on the scene and willing to accept responsibility for it. Also, the State's claim on appeal that defendant might have been intoxicated is belied by the actions of the officers themselves, who were ready to turn the vehicle over to him shortly after the initial stop. Indeed, there was never even any reference to intoxication at the suppression hearing, and at oral argument here the State conceded that defendant was not intoxicated. In these circumstances the decision to "impound" the car  and apparently return it immediately after the *357 inventory to defendant  was not reasonable. Nothing in the record shows this conduct to have been necessary.
Moreover, even if the majority decision in Slockbower could, in some degree, be read to support the officers' decision to impound the car, it would appear that such an interpretation would contravene the well-reasoned decisions in other jurisdictions which have addressed this issue.[3] In People v. Landa, supra, 30 Cal. App.3d 487, 106 Cal. Rptr. 329, police stopped defendant for driving with a broken taillight. During a check on defendant's identification the police learned that he was wanted on an "outstanding traffic warrant." Thereafter, they arrested defendant, impounded his car and, during an inventory, discovered drugs and firearms therein. In holding that the discovered contraband must be suppressed, the court stated:
However, the drugs, bullets and firearms found in defendant's vehicle should have been suppressed as having been seized as the result of an unlawful search. We conclude under the circumstances of this case that the deputies' custodial care of defendant's vehicle after his arrest was neither necessary nor proper. The People's burden of establishing the necessity for the taking and the inventory (People v. Nagel, 17 Cal. App.3d 492, 497, 95 Cal. Rptr. 129; Virgil v. Superior Court, 268 Cal. App.2d 127, 132, 73 Cal. Rptr. 793) was not met. While police have authority to impound a vehicle under proper circumstances pursuant to section 22651 (h), Vehicle Code, and defendant was alone in his car, neither his arrest on the warrant nor the circumstances surrounding the original detention and subsequent arrest had any connection with the necessity for police custodial care of his vehicle. Defendant had turned from Olympic Boulevard onto a side street where he was stopped. Nothing in the record shows that the car was stolen or subject to forfeiture, or illegally parked and could not have been locked and left *358 unattended. The situation would have been no different had defendant himself voluntarily parked the vehicle, locked and left it. (People v. Nagel, 17 Cal. App.3d 492, 498, 95 Cal. Rptr. 129.) [106 Cal. Rptr. at 331-332]
Similarly, in State v. Bales, supra, 15 Wash. App. 834, 552 P.2d 688, the court noted that "reasonable cause for impoundment" may arise if the car is obstructing traffic, mechanically defective, stolen, abandoned or otherwise where, under the facts and circumstances, "reasonable grounds" exist. 552 P.2d at 689. See also, State v. Singleton, supra, 511 P.2d at 1399-1400. And in Tolbert v. State and Granville v. State, supra, the court suppressed evidence seized during an inventory and emphasized that the police could have left the car on the street or notified the owner thereof. In State v. Goodrich, supra, the court held that the officer's refusal to release the car to defendant's mother and brother, after defendant was arrested for driving while intoxicated, rendered impoundment unreasonable. The court noted that the police officer's contention that he was merely safeguarding defendant's car was without foundation since defendant "obviated that necessity" by assuming all responsibility for his property himself by arranging to have his mother or brother drive it home. 256 N.W.2d at 511.
The common theme underlying these cases and others  see generally, Annotation, "Inventory Search of Impounded Vehicle," 48 A.L.R.3d 537 (1973)  is that something more must be shown to justify impoundment of a car than that it would otherwise be left unattended. There must be a showing that some reasonable necessity prompted the impoundment. This is a salutary rule, for otherwise police would be authorized to freely stop a car for a minor traffic infraction, impound it and search it with impunity. Surely such a circumstance is not consonant with the Fourth Amendment. As the court in United States v. Edwards, 554 F. 2d 1331, 1339 (5 Cir.1977), said: "The fourth amendment is not crushed by the four wheels of an automobile; automobiles do not work a forfeiture of privacy."
*359 Lastly, the police herein noted that "in all probability" the vehicle would have been released to defendant following impoundment and inventorying. In light of this fact it cannot be said that there existed reasonable necessity for impounding the car since the police themselves planned to release it shortly thereafter. The only apparent purpose for the impoundment was to provide the police with an opportunity to search the car.
Besides showing that impoundment is reasonably necessary, it is also the burden of the State to demonstrate that the inventory search was undertaken in order to fulfill any or all of the three "needs" announced by the court in South Dakota v. Opperman, supra. As Justice Powell observed in his concurring opinion, it is precisely because an officer conducts an inventory under routine procedures to protect himself and the arrestee, and thus makes no "discretionary determination" to search or not, that Fourth Amendment prohibitions are not offended by such procedures. 428 U.S. at 383, 96 S.Ct. 3092. Conversely, where the search is nothing more than a "pretext" and a subterfuge to make a general, exploratory search, the Fourth Amendment does apply and will invalidate the search. Id. at 376, 96 S.Ct. 3092.
Evidence that a search characterized as an "inventory" is in reality a full-blown investigatory search subject to Fourth Amendment strictures may be found under the "facts and circumstances" of the search itself. Opperman, supra at 375, 96 S.Ct. 3092. In United States v. Edwards, supra, the court noted that the alleged "inventory" search turned up stolen checks beneath the carpet of defendant's car, "hardly a likely place for valuables." 554 F.2d at 1338. The evidence was thereafter suppressed. In State v. Gluck, 83 Wash.2d 424, 518 P.2d 703 (Sup. Ct. 1974), the court held that a search of defendant's car was not sustainable under an inventory theory, noting:
The record here reveals merely that the officers at trial asserted that they "pulled an inventory search of the vehicle for personal *360 property." The record does not indicate that the officers made a complete list of other items in the vehicle nor was it asserted that the officers completely searched, both under the hood and in the trunk, the entire vehicle after they found the incriminating bag. Without more, it cannot fairly be characterized as an inventory search. [518 P.2d at 707]
And in People v. Rutovic, Colo., 566 P.2d 705 (Sup. Ct. 1977), the court struck down a search of defendant's car where the officer involved noted that he was "hoping to find" contraband in the car. The court said of the "inventory": "Its focus was accusatory, being an exploration seeking to discover incriminating evidence against the defendant." Id. at 706.
Under the facts of the case at bar, we conclude that the "inventory" undertaken by the officers was nothing more than a pretext for an exploratory investigation. As noted previously, the impoundment could serve no other purpose than to provide grounds for a search, since the officers intended to release the car to defendant, anyway. Second, the officers themselves became suspicious of defendant after finding the empty, glassine envelopes in his pocket  thus, the motivation for the search. Third, Patrolman Helber implied at the suppression hearing that the "inventory" ceased after the contraband was found. Fourth, the contraband was discovered wedged behind the back of the front seat  hardly a likely place for valuables. Fifth, the officer noted that the search was undertaken, in part, to discover any "contraband" which might have been in the car. No inventory sheet was presented at the suppression hearing, nor were any police directives concerning "routine" inventory checks presented. It was not clearly established below that the procedure here undertaken was in fact "standard practice" in the department.
For the foregoing reasons, we conclude that the trial judge erred in upholding the search herein under an "inventory" theory.

*361 II

Probable cause and exigent circumstances
A warrantless search of an automobile may be upheld if it is shown that the search was predicated upon probable cause. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The automobile exception to the usual warrant requirement is permitted by the courts because it is recognized that "the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable * * *." Chambers v. Maroney, 399 U.S. 42, 50-51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). Additionally, the relaxed Fourth Amendment standard is based on the notion that there is a lesser expectation of privacy in a motor vehicle than in a dwelling. South Dakota v. Opperman, supra 428 U.S. at 368, 96 S.Ct. 3092; Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).
The heart of this "narrow exception" to the Fourth Amendment warrant requirement, Almeida-Sanchez v. United States, 413 U.S. 266, 269, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), is the concept of probable cause. The Supreme Court in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), offered this definition of probable cause:
* * * Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 555, 39 A.L.R. 790 * * *. [at 175-176, 69 S.Ct. at 1310]
In assessing the facts surrounding a search, the courts must consider the specialized experience and "work-a-day" knowledge of policemen continually exposed to the criminal enterprise. State v. Kasabucki, 52 N.J. 110, 117 (1968). *362 Further, "[c]ourts should always remember that arresting officers have to act on the spur of the moment and that they are not constitutional lawyers. State v. Romeo, supra, 43 N.J. [188] at p. 206. Judicial review must be `in a commonsense and realistic fashion.' United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965)." State v. Contursi, 44 N.J. 422, 431 (1965). In short, probable cause is a flexible, nontechnical concept which must be applied with a practical appreciation of the facts of every-day life. State v. Waltz, 61 N.J. 83, 87 (1972); State v. Williams, 117 N.J. Super. 372, 375 (App. Div. 1971), aff'd 59 N.J. 535 (1971).
However, "[t]he problem in searches of motor vehicles is the area between suspicion and probable cause. The citizen who has given no cause for belief that he has committed or is engaging in the commission of crime is entitled to proceed on his way without interference." State v. Valentin, 74 N.J. Super. 502, 506 (Law Div. 1962); Brinegar v. United States, supra 338 U.S. at 176, 69 S.Ct. 1302. A mere exploratory search based upon an officer's own suspicions violates the Fourth Amendment. State v. Parsons, 83 N.J. Super. 430, 444 (App. Div. 1964).
In State v. Parsons, supra, the Appellate Division invalidated a search of defendant's car. The search was instigated after defendant and another drove up to a bank window and attempted to redeem 19 silver dollars. The teller thought the request was unusual and, after defendant informed her that he was from another town, she alerted the police. The police then searched the car and attempted to justify their action by noting that defendant had a large amount of rare coins, was from another town and tried to hide his face from the cashier. The court found the search to be merely exploratory and thus violative of the Fourth Amendment. 83 N.J. Super. at 444.
The facts in the case at bar which are relied upon to establish probable cause are as follows: (a) the "erratic stop" at the intersection; (b) driving the vehicle for a short *363 time on the wrong side of the street, and (c) the nine empty glassine envelopes found in defendant's possession. It is significant to note, however, that the last fact was not uncovered until the officers decided to bring the vehicle to the precinct station and patted defendant down. We cannot conclude that these facts, if presented to a neutral magistrate, would provide sufficient grounds for finding probable cause and issuing a warrant. Nothing visible in the interior of the car, as in State v. Gray, 59 N.J. 563 (1971), or State v. Waltz, supra, gave the slightest indication to the officers that it contained contraband. Further, if the officers were going to charge Super with reckless driving or driving while intoxicated, nothing suggests that further evidence of these "crimes" could be discovered within the vehicle. See State v. Scanlon, 84 N.J. Super. 427, 435 (App. Div. 1964).
Indeed, after the officers pulled the vehicle over, defendant and Super took no evasive action or made any "furtive movements" which could have heightened suspicion. The evidence adduced by the State at the suppression hearing affirmatively shows that defendant and Super were coherent, cooperative and possessed of their faculties. Also, this impression is strengthened by the officers' testimony that "in all probability" the vehicle would have been turned over to defendant after it was "inventoried" at the station. In short, while the officers may have had their own "suspicions" about defendant and Super, State v. Parsons, supra 83 N.J. Super. at 444, the facts which supported such suspicions did not rise to the level of probable cause. Any doubts engendered by the earlier action of defendant Super in driving the car, should have been dispelled when the car was stopped. At that point, nothing defendant or Super did could confirm in the mind of a reasonable man that an offense had been committed and that evidence thereof would be found in the car.
For the foregoing reasons, we conclude that the trial judge erred in denying defendant's motion to suppress. Further, because it is apparent that the decision of the officers *364 to impound the vehicle directly precipitated defendant's alleged "consent" to a search of his person, whereby the empty glassine envelopes were discovered, we conclude that that evidence should have been suppressed, as well.
The order denying defendant's motion to suppress is reversed. It follows that defendant's conviction must be, and is, reversed also. A new trial is ordered if the State deems it appropriate.
NOTES
[1] Defendant had also been convicted of possession of said substance. However, defendant's post-trial motion to vacate said conviction on the ground that it merged with the indictment for possession with intent to distribute was granted.
[2] At the outset it should be noted that, despite the fact that defendant was merely a passenger in the seized automobile, the State does not attack defendant's standing to pursue the suppression motion. See Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
[3] Note that in both South Dakota v. Opperman, and Cady v. Dombrowski, supra, the Supreme Court, in upholding the impoundment and subsequent inventory search, recognized that the operators of the seized vehicles were not available to make "other arrangements" for safeguarding them. 428 U.S. at 375, 96 S.Ct. 3092; 413 U.S. at 443, 93 S.Ct. 2523. The apparent implication is that if reasonable alternatives exist, impoundment is not warranted.