**STATE of Iowa, Appellee,**

v.

**David Leroy KUSTER, Appellant.**

**No. 83–1261.**

Supreme Court of Iowa.

Aug. 22, 1984.

**430**

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen. and Thomas H. Miller, County Atty., for appellee.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, Des Moines, for appellant.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

This is an appeal by the defendant from his conviction of terrorism, Iowa Code section 708.6(1). He raises two issues: (1) refusal to suppress evidence seized when his vehicle was impounded and inventoried by the police officers; and (2) refusal of the trial court to sustain a challenge for cause directed at a juror who was a sister of the complaining witness. We reverse and remand.

At about 6:00 one evening shots were fired into the rural Adair, Iowa, home of the Carl Lemke family. The shots were fired by the driver of a pickup similar to one driven by the defendant, however, no identification of him was made by the eyewitnesses to the event. About three hours after the shooting, the defendant was arrested in a tavern in downtown Stuart, Iowa. His pickup, which was locked and legally parked on a city street near the tavern, was impounded by the police and searched without a warrant. An expert for the State testified that at least two of the bullets found in the walls of the Lemke home were fired from a .22 caliber gun found in the pickup. We first address the search issue.

### I. *The Motion to Suppress.*

Kuster moved to suppress the gun and other evidence taken from his truck, asserting that the search of the vehicle was illegal because the officers had no warrant and because they failed to furnish a receipt for the seized property as required by Iowa Code section 808.8 (procedures for executing and returning search warrants). It is undisputed that, while the officers had an arrest warrant, no effort was made by them to obtain a search warrant. The trial court ruled that the vehicle was searched as a result of a lawful impoundment and overruled the defendant's motion to suppress.

The State argues that the defendant failed to preserve error on the search issue because his motion to suppress challenged the search only on the ground that no warrant had been obtained—not that it was an invalid impoundment.

■ Whether we characterize the officers' examination of the interior of the vehicle as a warrantless "search" or merely an "inventory," *see South Dakota v. Opperman,* 428 U.S. 364, 370–71, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1006 (1976), it was incumbent on the State to justify it, either on a probable cause basis, *e.g., Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), or as incident to a lawful impoundment under *Opperman.*

■ The defendant put the legality of this intrusion in issue by his motion to suppress. The State responded by claiming the warrantless "search" was not a search at all but was a lawful inventory following impoundment, under *Opperman.* This is the basis on which the district court

admitted the evidence seized from the vehicle. Having thus framed the issue, and after obtaining a favorable ruling on that theory, the State waived any objection to the defendant's failure to object on the basis it was an improper impoundment inventory.

 Routine inventories of vehicles impounded by law enforcement officers have been based upon three distinct needs: (1) the protection of the owner's property while it remains in police custody; (2) the protection of the officers against claims or disputes over the property; and (3) the protection of the officers from potential danger. *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. *See also State v. Roth,* 305 N.W.2d 501, 504–05 (Iowa 1981). Even if these procedures are viewed as "searches" rather than routine inventories, they are almost universally permissible under the "reasonableness" standard of the fourth amendment. *Opperman,* 428 U.S. at 370–72, 96 S.Ct. at 3097–98, 49 L.Ed.2d at 1006–07.

 It is, of course, necessary that such inventories be conducted as an incident to the caretaking function of the police, in accordance with the established procedures, and not as a guise for a warrantless search. *See Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100, 49 L.Ed.2d at 1008–09.

 The legal validity of the inventory depends upon the lawfulness of the underlying impoundment. *Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009 ("The ... police were undisputedly engaged in a caretaking search of a lawfully impounded vehicle."); *United States v. Wilson,* 636 F.2d 1161, 1163 (8th Cir.1980) ("both the initial seizure and subsequent search must be legitimate"); *In re One 1965 Econoline,* 109 Ariz. 433, 435, 511 P.2d 168, 170 (1973); *People v. Nagel,* 17 Cal.App.3d 492, 497, 95 Cal.Rptr. 129, 133 (1971); *United States v. Pannell,* 256 A.2d 925, 926 (D.C.1969); *Dunkum v. State,* 138 Ga.App. 321, 325, 226 S.E.2d 133, 136 (1976); *People v. Brown,* 100 Ill.App.3d 57, 64, 55 Ill.Dec. 429, 433, 426 N.E.2d 575, 579

(1981) ("require that the police act properly in taking possession of the vehicle"); *State v. Boster,* 217 Kan. 618, 624, 539 P.2d 294, 299, 300 (1975); *State v. Goodrich,* 256 N.W.2d 506, 510 (Minn.1977); *State v. Peterson,* 583 S.W.2d 277, 280 (Mo.App.1979); *Kelly v. State,* 607 P.2d 706, 707 (Okla. Crim.App.1980); *Benavides v. State,* 600 S.W.2d 809, 810 (Tex.Crim.App.1980) ("before an inventory search can be upheld as lawful there must be an inquiry into the lawfulness of the impoundment"); *State v. Singleton,* 9 Wash.App. 327, 511 P.2d 1396 (1973). *See also* Annot. 48 A.L.R.3d § 5, at 551–54. *But see U.S. v. Pappas,* 613 F.2d 324 (1st Cir.1979).

 The test for whether impoundment is justified has been variously stated. "In the absence of statute or ordinance, there must be reasonable cause for the impoundment." *Singleton,* 511 P.2d at 399. *Boster,* 533 P.2d at 299 ("reasonable grounds"); *Cleveland v. State,* 410 So.2d 1378, 1379 (Fla.App.1982) ("there must be an actual need for impoundment"); *Granville v. State,* 348 So.2d 641, 642 (Fla.App.1977) ("there must be some necessity"); *State v. Lunsford,* 655 S.W.2d 921, 923 (Tenn.1983) ("reasonably necessary"); *State v. Jewell,* 338 So.2d 633 (La.1976) (necessary); *State v. Slockbower,* 79 N.J. 1, 12, 397 A.2d 1050, 1053 (1979) ("substantial necessities").

 The burden of demonstrating the need to impound is on the State. *State v. McDaniel,* 156 N.J.Super. 347, 383 A.2d 1174, 1179 (1978); *Singleton,* 511 P.2d at 1400; *Miller v. State,* 403 So.2d 1307, 1313 (Fla.1981); *State v. Crosby,* 403 So.2d 1217, 1219 (La.1981); *Drinkard v. State,* 584 S.W.2d 650, 654 (Tenn.1979).

In formulating a reasonableness test, one authority states:

> It is submitted that for an impoundment of an arrestee's vehicle to be reasonable under the fourth amendment, the arresting officer should be required (i) to advise the arrested operator "that his vehicle will be taken to a police facility or private storage facility for safekeeping unless he directs the officer to dispose of it in some other lawful manner," and (ii)

to comply with any reasonable alternative disposition requested. Surely, the police should not be expected to undertake delivery of the auto to some distant point or to make any other disposition which would be more onerous than having the vehicle brought to the station. But if the driver asks that his car be left at the scene and the circumstances are such that it can be lawfully parked in the vicinity, then his wishes should be respected.

2 W. LaFave, *Search and Seizure* § 7.3, at 559 (1978).

■ When assessing the reasonableness of the police impoundment in this case, we note that Kuster was not near the vehicle when he was arrested; the vehicle was locked, legally parked, and it presented no danger to the public. There was no evidence the vehicle was in danger of theft or vandalism as to it or its contents. In this respect, the case is similar to those where the vehicle was parked at the defendant's residence, at a motel or restaurant parking lot, or at some other place indicating little need for impoundment for safekeeping purposes. In those cases, impoundment is usually found to be improper. *See* LaFave, *supra* § 7.3, at 555.

Further, no effort was made by the police to allow the defendant to provide for the care of the vehicle and apparently no inquiry was made of him as to what he wanted to have done with the vehicle. In fact, there was evidence the police had refused to allow a family member to care for the pickup. No established policy of the police department was evident other than a general policy that at any time when there is a felony arrest the vehicle was to be seized. This case should therefore be distinguished from *Opperman* in which the police had a well-established policy for impoundment requiring a detailed inventory to be prepared and furnished. No such inventory was ever prepared in this case.

This case must also be distinguished from *State v. Roth,* which the State relies upon. In *Roth,* an intoxicated driver and passenger were arrested on the highway and a whiskey bottle which was in plain view was seized. A resulting inventory search revealed marijuana in the trunk. In *Roth* the police were in a position of having to do something with the car which was in danger of being struck or possibly vandalized.

One court has noted that

[t]he common theme underlying these cases and others is that something more must be shown to justify impoundment of a car than that it would otherwise be left unattended. There must be a showing that some reasonable necessity prompted the impoundment. This is a salutary rule, for otherwise police would be authorized to freely stop a car for a minor traffic infraction, impound it and search it with impunity. Surely such a circumstance is not consonant with the Fourth Amendment. As the court in *United States v. Edwards,* 554 F.2d 1331, 1339 (5th Cir.1977), said: "The fourth amendment is not crushed by the four wheels of an automobile; automobiles do not work a forfeiture of privacy."

*State v. McDaniel,* 156 N.J.Super. 347, 358, 383 A.2d 1174, 1179 (1978) (citation omitted).

■ We conclude under the circumstances of this case, where the vehicle was in no imminent danger of vandalism, theft, or other injury to it or its contents and was so attenuated from the actual site of the defendant's arrest as to negate any need for protection by the police, that the impoundment was unreasonable.

The State has an alternative argument: that if the search cannot be upheld as an impoundment inventory, we should nevertheless affirm the district court's ruling on the basis the officers had probable cause for a warrantless search. *See Chambers v. Maroney,* 399 U.S. at 47–48, 90 S.Ct. at 1979, 26 L.Ed.2d at 426. It cites *State v. Harlan,* 301 N.W.2d 717, 720 (Iowa 1981), to support its argument that we will uphold a trial court's conclusion, even if we do not adopt its reasoning. *See also State v. McCowen,* 297 N.W.2d 226, 227 (Iowa 1980)

("Even though the State did not resist the motion [to suppress] in the trial court as untimely, we will uphold a ruling of the court on the admissibility of evidence on any ground appearing in the record, whether urged below or not.").

The problem with the State's probable cause argument, however, is that the record made at the suppression hearing is insufficient to make such a finding. The officers have never claimed to have had probable cause for a search; they justified it solely on the basis of the impoundment. We cannot assume that probable cause would have been established if the State had attempted to do so. *Cf. State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980) ("Officers are bound by their true reason for making the stop. They may not rely on reasons they could have had but did not actually have.").

## II. *Juror Challenge for Cause.*

The district court, Brown, J., refused to remove a prospective juror on the defendant's challenge for cause. The basis of the challenge was that the juror was a sister of Carl Lemke, whose home was the target in this shooting. When questioned about her relationship to Lemke, the sister acknowledged she would probably not be impartial—but on the basis of her knowledge of the defendant, not because of her relationship to Lemke. She did state that she could follow the court's instructions. She also stated she did not see the Lemkes often. The trial court refused to remove her for cause, and the defense used a peremptory challenge to remove the sister from the jury. The defendant exercised all peremptories allowed him.

Iowa Rule of Criminal Procedure 17(5) states:

Challenges for cause. A challenge for cause may be made by the state or defendant, and must distinctly specify the facts constituting the causes thereof. It may be made for any of the following causes:

. . . .

d. Affinity or consanguinity, within the fourth degree, to the person alleged to be injured by the offense charged, or on whose complaint, or at whose instance, the prosecution was instituted, or to the defendant, to be computed according to the rule of the civil law.

While the trial court is vested with broad discretion in allowing or disallowing challenges for cause, *State v. Winfrey*, 221 N.W.2d 269, 273 (Iowa 1974), that discretion was abused here. We discussed this issue at some length in the case of *State v. Beckwith*, 242 Iowa 228, 238–39, 46 N.W.2d 20, 26 (1951), where we said prejudice will be presumed when, as here, the defendant uses all of his peremptory challenges and uses one to remove the challenged juror. *Id.* at 232, 46 N.W.2d at 23. *See also State v. Williams*, 285 N.W.2d 248, 267 (Iowa 1979).

Under the circumstances of this case, it was an abuse of discretion to overrule the challenge. Although on retrial it is highly unlikely that such an event will reoccur, we feel that some direction must necessarily be given to the bench and bar relating to such matters.

REVERSED.