OPINION OF THE COURT
John Carey, J.
The defendant is charged with committing in March and April 1987 grand larceny in the third degree, forgery in the second degree (25 counts), criminal possession of a forged instrument (25 counts) and falsifying business records in the first degree.
*939 In response to defendant’s motion to suppress, Judge Kenneth H. Lange of this court by order dated November 25, 1987, provided for a hearing as to evidence seized from defendant’s person or the immediate area around him on April 6, 1987.
A hearing was held on July 19, 1988, during which this court ruled that its scope would include objects seized from defendant’s car and objects obtained from his employer. The hearing was resumed on July 21st and concluded on July 22, 1988.
Nothing appears to have been seized from the defendant’s person or the immediate area around him. The objects obtained from his employer, who had received them from defendant two days before any contact with the police, are not suppressible, as previously ruled. The objects seized from defendant’s car raise the question novel in New York, whether an auto on private property is lawfully impounded when the police choose to remove it themselves, with the property owner’s consent, rather than letting the car owner defendant arrange for its removal.
FINDINGS OF FACT
On April 3, 1987, defendant had been for a year the manager of a restaurant at Con Ed’s Indian Point Nuclear Plant. His employer was Greyhound Food Management, whose district manager, Jim Fris, called that day to ask about missing March revenues. The normal practice had been for defendant to deposit each day’s receipts at the Chase Bank branch office in Buchanan and to send the validated deposit tickets to Greyhound’s headquarters in Phoenix, Arizona. Defendant told Fris that he had in his possession deposit tickets validated by the bank to show March deposits.
At a meeting the next day, Saturday, April 4th, defendant gave Fris 22 deposit tickets and assured him that the money was in the bank. Not satisfied, Fris arranged a meeting at the bank on Monday the 6th. The bank’s night deposit log showed nothing for March except three deposits early in the month attributable to February receipts. The March receipts of about $18,000 have never been located.
Fris next went to speak again with defendant, who still insisted the money was in the bank. At Fris’ suggestion, they both went late in the afternoon of April 6th to the Village of Buchanan Police Department. On advice from his superiors, *940 Fris wrote out a statement, based on which defendant was arrested by Officer Richard Bashant.
Defendant made no statement upon being given Miranda warnings, but called Sharon Maruch at their shared home in Sloatsburg, Rockland County. She borrowed a car and drove to Buchanan, where Bashant gave her defendant’s personal effects except for the key to his car, which was still parked where he had left it near the restaurant at Indian Point.
Maruch tried to remove property of hers from defendant’s car but was prevented by Con Ed Operations Security Supervisor Gerald Cullen because she had neither a key nor permission from the Buchanan Police Department. Cullen tried to reach that Department by phone but his call was automatically switched to the Peekskill Police Department because Bashant, the sole Buchanan officer then on duty, was on his way to or from the Westchester County Jail in Valhalla, where he had taken defendant. Maruch would have removed defendant’s car herself if she had been given his keys by the police or had thought to bring her spare set from home.
On his return to Buchanan, Bashant arranged for a towing company to remove defendant’s car from Indian Point. It was taken to the Police Department and there impounded. An inventory listed "felonious use” as the justification, this having been selected by Bashant because no other reason shown on the form applied.* From inside defendant’s unlocked briefcase, which was on the front seat, Bashant took documents. From the spare tire wheel well in the trunk he took other objects.
There is partial conflict in the testimony over the question whether Con Ed’s Mr. Cullen asked the police, either Buchanan or Peekskill, to remove defendant’s car from Indian Point. Cullen’s own report does not reflect any such request and indicates, if anything, that its removal was a police initiative. Cullen testified at first that in the call that was answered in Peekskill: "I indicated I wanted this automobile and this woman removed from our property.” He then modified this so as to withdraw any immediacy as to the car: "if Mr. Bonneau was going to be incarcerated for any length of *941 time, I wanted that vehicle removed.” Later Cullen denied any recollection of whether he had made such a request.
Officer Bashant on the other hand said Cullen had called directly to him about Maruch’s attempt to get into the car, paraphrasing Cullen as saying "you can take it” and adding on cross-examination that Cullen had said "he would like the vehicle off his property, off the Con Ed property.” While this could be construed as a thinly veiled request for removal of the car by the police, the court finds that defendant has shown by a preponderance of the evidence that the police took it upon themselves to remove the car with a hint but without a request from Con Ed.
Maruch testified that the acting Village Justice, who arrived the evening of April 6th to arraign defendant, suggested Bashant impound the car to search it for evidence. The court finds that defendant did not establish such a suggestion by a preponderance of the evidence. The Judge testified that the car was not even mentioned within her hearing on the 6th but only on the 7th when she returned for an adjourned arraignment. There was no testimony about consideration of a possible search warrant.
CONCLUSIONS OF LAW
As noted above, Officer Bashant caused defendant’s car to be towed from Con Ed’s Indian Point facility, with Con Ed’s explicit approval but with no request from the company. The car was safe where it was, in an unusually secure location, until such time as Maruch, or defendant once out on bail, could retrieve it. There was no testimony that the presence of the car caused any risk to Con Ed. Not being on a public street or other accessible spot, the car was in no danger of being molested. There was in short no reason for the Buchanan police to impound the car. Therefore Bashant had no right to have it towed to police headquarters or to search it.
The permissible contemporaneous search of the car of one legally arrested does not apply to a search "remote in time or place from the arrest.” (Preston v United States, 376 US 364, 367 [1964].) Nor is there in this case any assertion of probable cause to believe the fruits of a crime to have been concealed in defendant’s vehicle as in Texas v White (423 US 67, 68 [1975], reh denied 423 US 1081 [1976]). In the latter event, the local Judge already present at police headquarters could have issued a search warrant.
*942 The Second Department in People v Robinson (36 AD2d 375, 376 [1971]) distinguished the Preston (search incidental to valid arrest) situation as well as that of White (supra) (probable cause to search) and upheld the seizure of a revolver found in the truck of a car during an " 'inventory search’
"The testimony at the hearing indicated that the examination of the automobile was conducted pursuant to a police regulation, the purpose of which was to inventory and preserve the property in the vehicle, and that in conducting the examination there was no intention to search for evidence of a crime.” (36 AD2d, supra, at 376.) The court stressed that it was speaking of "a vehicle which has been lawfully impounded”. (Supra, at 377.) What made impounding the car lawful was "because it was unregistered, uninsured and uninspected.” (Supra, at 376.)
The New York Court of Appeals similarly approved the impounding of a car illegally left in a tow-away zone and towed to a police storage facility. (People v Sullivan, 29 NY2d 69 [1971].) The court stressed that the purpose of the impounding "was to promote public safety and to facilitate the flow of street traffic. This was not, then, an 'unreasonable’ search.” (29 NY2d, supra, at 77.)
Defendant Bonneau’s car, however, was not "unregistered, uninsured and uninspected” as in Robinson (supra, at 176) nor was it parked so as to endanger public safety or interfere with the flow of traffic as in Sullivan (supra). Bonneau’s arrest had no apparent connection whatever with his car.
Officer Bashant’s assertion of "felonious use” as the reason for impounding Bonneau’s car was unfounded. The car did not need to be protected either for his benefit or that of the police; it was unusually safe where it was, especially since the time likely to elapse until Bonneau either made bail and removed it himself, or had Maruch get her spare keys and remove it, could not have seemed like more than a few hours at most. Such removal would have been quicker yet if Bonneau’s own car keys had not mysteriously disappeared, by Bashant’s doing if Maruch is to be believed.
A pertinent discussion formed part of the opinion in People v Griffin (116 Misc 2d 751, 763-764 [Sup Ct, NY County 1982]):
"In this jurisdiction, the courts have never explicitly discussed the extent to which police must explore the alternatives to impoundment before an impoundment and inventory search * * *
*943 "Many other jurisdictions have explicitly considered the issue, however, and most, if not all, of them require some level of effort to find an alternative to impoundment, especially where the arrest is for a minor offense. The required efforts range from informing the defendant of the alternatives — such as having someone pick up the car, parking on the street (for which defendant must execute a release) or impoundment — to at least waiting a reasonable time for a legitimate custodian to pick up the vehicle * * *
"The cases also focus on the amount of time the prisoner is expected to be in custody.”
A non-New York case on somewhat similar facts was State of Florida v Cash (275 So 2d 605 [Fla Dist Ct App 1973]). Defendant was arrested for trespassing at a motel, whose owner asked the police to remove defendant’s car. Suppression of objects found in the car upon inventory was reversed. The court gave no consideration in its opinion to the question whether the proposed removal, which had not yet occurred, was proper. No necessity for it was shown, nor any reason why the motel owner’s request would add to such right as the police might have had to remove in the absence of the request.
Cash (supra) was cited as holding that a landowner’s request for removal justifies impoundment in People v Schultz (93 Ill App 3d 1071, 418 NE2d 6, 9 [1981]), which held that without such a request impoundment and related search of a lawfully parked car were unlawful. Similarly, State of Iowa v Kuster (353 NW2d 428, 432 [Sup Ct, Iowa]) held that: "where the vehicle was in no imminent danger of vandalism, theft, or other injury to it or its contents and was so attenuated from the actual site of the defendant’s arrest as to negate any need for protection by the police, that the impoundment was unreasonable.” The court took note of circumstances also present in Bonneau’s case: that defendant "was not near the vehicle when he was arrested; the vehicle was locked, legally parked, and it presented no danger to the public. There was no evidence the vehicle was in danger of theft or vandalism as to it or its contents.” (Supra, at 432.)
"Further, no effort was made by the police to allow the defendant to provide for the care of the vehicle and apparently no inquiry was made of him as to what he wanted to have done with the vehicle. In fact, there was evidence the police had refused to allow a family member to care for the pickup.” (Supra, at 432.) Finally, in State of Utah v Rice (717 *944 P2d 695, 696 [Sup Ct, Utah 1986]), conviction was reversed in the following situation: "When stopped by the officers, defendant pulled over and parked his truck off of the street in an office parking lot. He was then arrested for driving with a suspended license. The officers refused to permit him to leave his locked truck in the parking lot or to allow it to be retrieved by his parents, who lived only four blocks away. Instead, an officer drove the truck to the police station and there privately conducted an inventory search, during which time the drugs were found and seized.” These out-of-State cases are persuasive in the absence of sufficiently relevant New York authority.
Accordingly, the impoundment of defendant Bonneau’s car was improper, and the objects consequently found in it during an inventory search are ordered suppressed.

 The District Attorney’s pretrial memorandum filed on August 2, 1988, states that the other reasons for impoundment on the form were: accident, DWI, abandonment, no license and burned. None of these in fact did apply. Nor did "felonious use”. Therefore, Bashant was impounding without any justification recognized by his Department.