PEOPLE v KREZEN

Docket No. 76631. Argued April 9, 1986 (Calendar No. 6). Decided
    December 30, 1986.

Sandra Lee Krezen was convicted by a jury in the Kent Circuit
    Court, Roman J. Snow, J., of possession of less than fifty grams
    of cocaine with intent to deliver and of possession of less than
    fifty grams of cocaine. The Court of Appeals, MacKENZIE and
    LAMB, JJ. (D. E. HOLBROOK, JR., P.J., dissenting), reversed and
    remanded for a new trial on the ground that evidence discov-
    ered during an inventory of the contents of her automobile
    after it was impounded following her arrest had not been
    lawfully obtained because the impoundment was improper
    (Docket No. 71895). The people appeal.

    In opinions by Justice BOYLE, joined by Justices BRICKLEY and
    RILEY, and by Chief Justice WILLIAMS, the Supreme Court held:

    The decision of the Court of Appeals is reversed.

    Justice BOYLE, joined by Justices BRICKLEY and RILEY, stated
    that there was no state or federal constitutional violation by
    the police in the impoundment and inventory of the defen-
    dant's car. The impoundment was in accord with departmental
    procedures and the procedures were within the constitutionally
    mandated authority of the municipality. Thus, evidence of the
    cocaine found as a consequence of the inventory was validly
    admitted.

    Chief Justice WILLIAMS, concurring, stated that because the
    defendant was not arrested while in her car, her car was
    lawfully parked and locked at the time of her arrest, and there
    was no evidence that the vehicle was in any way impeding
    traffic or threatening public safety or convenience, the police
    did not act reasonably in impounding the car. However, be-
    cause the defendant's purse was in plain view on the front seat
    of the car and could not have been reasonably left there, and
    because returning the purse to the defendant inevitably would
    have led to discovery of the cocaine, the decision of the Court of
    Appeals should be reversed.

    Reversed.

    Justice LEVIN, joined by Justices CAVANAGH and ARCHER,
    stated that impoundment or movement by the police of the

defendant's legally parked automobile was not authorized under the law of Michigan.

Unlike cases in which the police are empowered to impound or move a vehicle because it is disabled or parked so as to represent a hazard to users of a street or highway, or in which the driver is disabled or intoxicated and is unable to move the vehicle or consent to removal, no statute or judicial decision authorized or empowered the police to impound or seize the defendant's property.

Unless a vehicle has been lawfully impounded, an inventory search and seizure cannot be justified under a "caretaking" rationale. In this case, the defendant's vehicle was not lawfully impounded. It could not have been impounded as an incident to her arrest. The danger of theft or vandalism because Krezen's purse was visible on the front seat of her automobile did not justify impoundment of her automobile or of the purse. The police had no obligation to concern themselves with the safekeeping of Krezen's property. When they did so, Krezen should have been given the choice of what to do, including leaving the automobile where it was rather than for it to be impounded. An officer might have offered to place her purse in the trunk of her automobile, or to hand it to her after it had been searched for weapons. The police neither inquired what Krezen wished to be done with her automobile or her purse, nor made any effort to allow her to provide for their safekeeping.

143 Mich App 34; 371 NW2d 882 (1985) reversed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*George S. Buth* for the defendant.

BOYLE, J. In this case, we are asked to decide if evidence obtained from the defendant's car during an inventory of its contents after impoundment was admissible. The car was impounded by the police after the defendant was arrested by the Grand Rapids Police Department at the Kent County Airport. The police had been alerted by authorities in San Diego, California, that the package picked up by the defendant contained cocaine.

The car was parked by the air freight office and the defendant's purse was left on the front seat of the car. The trial court in this case found the evidence admissible, but the Court of Appeals reversed the decision and remanded for a new trial on the ground that the evidence was unlawfully obtained in an improper impoundment.

We affirm the trial court's determination that the impoundment and inventory of Sandra Krezen's car did not violate the Fourth Amendment of the United States Constitution and that therefore the cocaine found in her purse consequent to the inventory was validly admitted into evidence. The impoundment in this case was in accord with departmental procedures, the departmental procedures were within the constitutionally mandated power of the municipality, and no violation of the state or federal constitution occurred. The decision of the Court of Appeals is reversed, and the trial court's admission of the evidence obtained during the inventory of Krezen's car is reinstated.

### I. THE FEDERAL CONSTITUTION IS NOT VIOLATED BY THE POLICE IMPOUNDMENT AND INVENTORY OF KREZEN'S CAR

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In *South Dakota v Opperman*, 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the United States Supreme Court upheld an inventory of a lawfully

impounded vehicle.[1] The police inventoried the car according to standard procedure, after observing a "number of valuables inside the car" in plain view. *Id.*, pp 375-376. The inventory was seen as a caretaking function rather than an investigative search. A majority of the Court found that the police conduct[2] was not unreasonable under the Fourth Amendment. In determining whether the warrantless inventory in *Opperman* was unconstitutional, the Court looked "to all the facts and circumstances of this case," *Cooper v California,* 386 US 58, 59; 87 S Ct 788; 17 L Ed 2d 730 (1967), to determine that the police conduct was not "unreasonable":

> The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in *Cady* [*v Dombrowski,* 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973)], there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive. [428 US 375-376.]

---

[1] The Court discussed some of the typical circumstances in which impoundments occur:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," *Cady v Dombrowski* [413 US 433, 441; 99 S Ct 2523; 37 L Ed 2d 706 (1973)], automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge. [*Id.*, pp 368-369. Citations omitted.]

[2] The *Opperman* Court did not determine whether the inventory was a "search." 428 US 370, n 6.

The actual inventory in the instant case was carried out in conformity with *Opperman.* The police acted according to departmental procedure, completing a standard inventory form. Furthermore, the defendant's purse was located in plain view on the front seat of the car. The inventory " 'was a routine administrative caretaking function performed pursuant to standard departmental procedures . . . .' " *People v Long (On Remand),* 419 Mich 636, 647; 359 NW2d 194 (1984).

The true issue is whether the initial impoundment of Krezen's car was a constitutional violation. The impoundment occurred within the context of a standard departmental policy that, upon arrest of the driver, all vehicles not released to another driver were to be impounded. The defendant argues that the policy is unconstitutionally overbroad, since it does not allow an exercise of discretion by the officer.

The actual departmental policy is unclear. One officer testified that impoundment was required when the owner/driver is arrested "unless that car is released to another person by authority of the owner." Another officer testified that when an arrest is made, the car is impounded "if it is not released to another party in the vehicle." If the policy is written, it was never entered into evidence as an exhibit. The Court of Appeals decision described the Grand Rapids policy as "to impound and inventory all motor vehicles following the arrests of their drivers . . . ." 143 Mich App 34, 40; 371 NW2d 882 (1985).

If the departmental policy is indeed that all arrests require impoundment, regardless of the surrounding factual circumstances, there may well be situations in which an impoundment would violate the Fourth Amendment as an unreasonable seizure. However, the actual policy is unclear, *and*

the specific facts in this case render the impound-ment decision eminently reasonable. Since this is not an alleged First Amendment violation, the reasonableness of the impoundment as applied to the facts of this case is what is determinative—the mere fact that the regulation might in some case be overbroad is not pertinent where the police activity vis-à-vis this defendant was constitutional. See, e.g., *United States v Raines,* 362 US 17, 21; 80 S Ct 519; 4 L Ed 2d 524 (1960).

The simple fact that the impoundment occurred without a warrant does not make it unconstitu-tional per se. In *Cooper v California, supra,* p 59, the United States Supreme Court observed:

> [W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case[;] . . . searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property.

While the issue in this case deals with impound-ment—a species of "seizure" rather than of "search"—the analysis used in relation to searches is instructive.

In *Cady,* the Court upheld the "search" of the trunk of an automobile which, after being in an accident, was towed to a private garage. The search was instituted because the defendant was a Chicago policeman and the Wisconsin police did not want his service revolver, which might have been in the car, to fall into the wrong hands and endanger public safety. *Id.,* p 443. In the course of looking for the revolver, the police found other incriminating evidence which led to the defen-dant's conviction for murder. The Court deter-

mined that lack of a warrant was not fatal and that the trunk search was reasonable under the facts of the case:

> The Court's previous recognition of the distinction between motor vehicles and dwelling places leads us to conclude that the type of caretaking "search" conducted here of a vehicle that was neither in the custody nor on the premises of its owner, and that had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained. The Framers of the Fourth Amendment have given us only the general standard of "unreasonableness" as a guide in determining whether searches and seizures meet the standard of that Amendment in those cases where a warrant is not required. Very little that has been said in our previous decisions . . . and very little that we might say here can usefully refine the language of the Amendment itself in order to evolve some detailed formula for judging cases such as this. Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not "unreasonable" within the meaning of the Fourth and Fourteenth Amendments. [*Id.,* pp 447-448.]

In the instant case, the impoundment of Krezen's car without a warrant was not unreasonable per se. As in *Cady,* the car was not on the premises of its owner, and, once the arrest occurred, it was no longer in the owner's actual possession. While "impounding" a house without a warrant just because the defendant was arrested outside of the house could, under certain circumstances, be unreasonable per se, a car is a different matter. Its very nature as a transportable nonfixed item makes it and its contents more subject to theft or damage. *Cady,* pp 441-442. A number of courts

have recognized that the possibility of theft or vandalism is a valid reason for impounding a car upon the arrest of the driver, especially where no other person is present to take control of the car. See, e.g., *United States v Staller,* 616 F2d 1284 (CA 5, 1980); *United States v Scott,* 665 F2d 874 (CA 9, 1981); *Cabbler v Superintendent, Virginia State Penitentiary,* 528 F2d 1142 (CA 4, 1975); *State v Sims,* 426 So 2d 148 (La, 1983). Other courts have recognized that leaving a car parked in a private location may be a nuisance. *United States v Brown,* 787 F2d 929 (CA 4, 1986). The impoundment was a caretaking function rather than an investigative one, instituted according to standard departmental policy to protect the defendant and the police from unnecessary thefts, recriminations, and civil suits. The trial court found the following as true:

> It is the opinion of this Court that the search of the vehicle was an inventory search and obviated the need for a warrant; that the reason for the search was to protect the items from being stolen or protect the police against any claims of loss or stolen property; that it was not for the pretext of trying to unearth any further criminal activity upon the part of the Defendant.

The impoundment, even without a warrant, was likewise not unreasonable under the Fourth Amendment.[3] As the people describe in brief:

The officers were arresting the defendant prop-

[3] Even if we were to hold that the police should have left Krezen's car in the parking lot, the police could not have reasonably left her purse sitting in plain view on the front seat. The purse would most likely have been returned to Krezen's possession, which would require a protective search for weapons at the site of the arrest and an inventory search at the station subsequent to her booking, see *Illinois v Lafayette,* 462 US 640; 103 S Ct 2605; 77 L Ed 2d 65 (1983).

erly for a serious felony. It was Saturday morning. They knew the defendant would not be arraigned until Monday. Her car was parked away from the main part of the airport. Her purse was plainly visible on the front seat of her car. The officers had been sued in the past for not following police policy in this area. How can the actions of the police in impounding the defendant's vehicle and conducting an inventory of its contents, under all these circumstances, be held unreasonable?

The Court of Appeals was concerned that a less intrusive means could have been used to obtain the same insurance against theft, vandalism, and suit against the police. *People v Krezen,* 143 Mich App 41-42. However, as the United States Supreme Court observed in *Cady, supra,* p 447, "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." See also *United States v Sharpe,* 470 US 675, 687; 105 S Ct 1568; 84 L Ed 2d 605 (1985).

The impoundment of Krezen's car in this case was neither arbitrary nor unreasonable given the surrounding circumstances.[4] Therefore, it did not

---

[4] Krezen was not parked in the long-term parking lot at the Kent County Airport—she parked outside the air freight offices, housed in a building only one-hundred feet long. While she originally testified that the parking area was "huge," she later said that no more than around seven cars—a few cars—were parked there. She also said that she parked "directly in front of the air freight office." The only inference to be drawn from the record is that this was a small parking area intended for vehicles parked temporarily while the drivers made a quick trip into one of the air cargo offices. No references in the record indicate that people customarily leave their cars there for days on end.

Justice LEVIN asserts that "[t]he 'caretaking' rationale for impoundment is inapposite when the person arrested does not desire that the police safeguard the person's property and accepts responsibility for possible losses." The issue here is whether the police decision to impound the car was reasonable—the police purpose is certainly a relevant factor in such a determination. Had the trial court found

violate the Fourth Amendment of the United States Constitution.[5]

## II. THE MICHIGAN CONSTITUTION WAS NOT VIOLATED BY THE IMPOUNDMENT AND INVENTORY OF KREZEN'S CAR

Once it has been determined that the federal constitution does not require suppression of the cocaine residue found in Krezen's purse, the plain language of Const 1963, art 1, § 11 prohibits exclusion of the evidence under the Michigan Constitution:

> The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. *The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.*

While some state courts have construed their state constitutions as barring evidence obtained in inventory searches valid under the federal constitution,[6] the plain language of art 1, § 11 prohibits such a result: "The provisions of this section shall

that the impoundment was a pretext to search Krezen's car, surely Justice LEVIN would consider the police purpose to be relevant in determining reasonableness.

[5] Justice LEVIN, p 717, misstates the holding of this opinion: that under the facts and circumstances in the instant case, the police conduct was not unreasonable under either the Fourth Amendment to the United States Constitution or Const 1963, art 6, § 1.

[6] See *South Dakota v Opperman (On Remand)*, 247 NW2d 673 (SD, 1976); *Wagner v Commonwealth*, 581 SW2d 352 (Ky, 1979).

not be construed to bar from evidence in any criminal proceeding any narcotic drug . . . seized by a peace officer outside the curtilage of any dwelling house in this state." Cocaine was discovered in an inventory of Krezen's car which occurred at the Grand Rapids airport. Thus, there is no basis for excluding this evidence under the Michigan Constitution.

### III. THE GRAND RAPIDS POLICE HAD AUTHORITY TO IMPOUND KREZEN'S CAR

The officers acted in conformity with the standard procedure of the police department of impounding all vehicles where the defendant was placed under arrest and there was no other driver present in the vehicle to take control of the vehicle. The reason for this policy, according to the officers who testified at the suppression hearing, was to protect officers[7] from claims filed by persons

[7] Justice LEVIN asserts that there is no police liability under *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), for lost or damaged property where the police make an arrest and fail to impound personal property. That question has, of course, not yet been decided by this Court, and its relevance relates to whether the police belief that there might be some form of civil liability adds to the reasonableness of the impoundment. The two officers in this case were sued for damage to an unimpounded car by a person arrested by them. Ironically, the officers failed to impound the car solely at the request of the arrestee. Furthermore, even if governmental immunity protected the officers from a state law tort claim for property damage or loss, it clearly cannot immunize them from suit under federal law. It is an understatement to observe that the current state of federal law is unclear on whether such an omission is a "deprivation of any rights, privileges, or immunities secured by the Constitution and the laws . . . ." 42 USC 1983. The United States Supreme Court has not yet decided whether the absence of a state remedy because of sovereign immunity would make that remedy "inadequate" for § 1983 purposes. *Daniels v Williams*, 474 US 327, —, n 1; 106 S Ct 662, 669, n 1; 88 L Ed 2d 662, 669, n 1 (1986). Thus, under the circumstances of the instant case, the asserted fear of civil suit was hardly unreasonable. It hardly seems necessary to say that we are not holding "that unfounded police fear of civil suit justifies a search or seizure under the Fourth Amendment." (LEVIN, J., p 721, n 47.)

who suffered, or claimed to have suffered, thefts or other losses involving vehicles not impounded while the driver was under arrest.[8] Under our constitution, the powers granted generally to municipalities, and the specific powers granted by the Grand Rapids charter to its police, the Grand Rapids police had basic authority to impound the car of Sandra Krezen.[9]

---

[8] *Q.* Are you familiar with occasions, sir, where members of the police department and perhaps people even in this very room have been sued for items that are missing from cars?

*A.* Very much so.

*Q.* Are you familiar specifically with someone in this courtroom that's been sued for items that were alleged to be missing from a car that was not impounded?

*A.* That's correct.

*Q.* Who would that be, sir?

*A.* Officer Price and also myself.

*Q.* You were part of that, too?

*A.* Yes, sir. It was erroneous, but I was named in the lawsuit.

*Q.* Was that a case where a vehicle was not impounded pursuant to the request of the person arrested?

*A.* Yes, sir, it was.

*Q.* And later allegations were made that items were missing from the car?

*A.* That is correct.

*Q.* And as a result, you and other members of the police department, the police department itself were all sued, is that correct?

*A.* That's correct.

[9] This discussion is made necessary by Justice LEVIN's view that the impoundment was improper because it was not authorized by statute or judicial decision. "In the absence of statutory authority, it becomes a matter for judicial or common-law decision whether the police are authorized to impound or move private property . . . ." (*Post,* p 714.)

No source of judicial power is cited in support of the imposition of Justice LEVIN's proposed rule on the local governments of this state. Const 1963, art 6, § 1 vests "the judicial power of the state" in our judicial system. Justice LEVIN's proposed rule is not, however, an exercise of a power vested in the judiciary. No violation of the state or federal constitutions by the Grand Rapids police is found to justify the proposed judicial alteration of an apparently reasonable police power regulation. Since the dispute here involves a local government official and a private citizen, this is not an application of a common-

Const 1963, art 7, § 21 requires the Legislature to provide for the incorporation of cities and villages:

> The legislature shall provide by general laws for the incorporation of cities and villages. Such laws shall limit their rate of ad valorem property taxation for municipal purposes, and restrict the power of cities and villages to borrow money and contract debts. Each city and village is granted power to levy other taxes for public purposes, subject to limitations and prohibitions provided by this constitution or by law.

The Legislature has indeed provided for the incorporation of villages, MCL 61.1; MSA 5.1201, cities of the fourth class, MCL 81.2; MSA 5.1592, and cities of the fifth class and home rule cities, MCL 117.7; MSA 5.2086. For villages[10] and fourth

---

law determination of what is right and just between private individuals in respect to private disputes, *Bugbee v Fowle,* 277 Mich 485, 492; 269 NW 570 (1936).

While the rule proposed by Justice LEVIN is one which could appropriately be adopted by the Grand Rapids governing body, it is not one which this Court should impose on the municipality. "There may be some concern that the Legislature may not act quickly or at all, but that surely is not a proper basis for this Court acting in the name of the Legislature." *People v Gilbert,* 414 Mich 191, 198; 324 NW2d 834 (1982) (LEVIN, J.).

[10] MCL 67.44; MSA 5.1328 provides:

> The council of any village may provide for and establish a police force, and may authorize the president to appoint, by and with the consent of the council, from time to time, such number of policemen and night watchmen as they shall deem expedient for the good government of the village, and for the protection of the persons and property of the inhabitants, and they may authorize the president of the village, in cases of emergency and danger, to appoint, temporarily, such number of policemen as in his judgment the occasion may require.

MCL 67.45; MSA 5.1329 provides:

> The council shall make all necessary rules for the government of the police, and proscribe the powers and duties of

class cities,[11] the Legislature specifically provides statutes delineating the authority of the local governing bodies over their police and the general powers of the police. For fifth class and home rule cities, the Legislature provides two relevant provisions. First, MCL 117.3(j); MSA 5.2073(j) provides that a mandatory charter provision is "[f]or the public peace and health and for the safety of persons and property." MCL 117.4j; MSA 5.2083 provides more generally for municipal powers:

> Each city may in its charter provide:
> (1) For the establishment of any department that it may deem necessary for the general wel-

policemen and watchmen, and they may invest them with such authority as may be necessary for the preservation of quiet and good order in the village.

[11] MCL 92.1; MSA 5.1749 provides:

> The council of any city may provide, by ordinance, for a police force and for the appointment by the mayor of such number of policemen and nightwatchmen as they may think necessary for the good government of the city and for the protection of the persons and property of the inhabitants; and may authorize the mayor to appoint special policemen from time to time, when in his judgment the emergency or necessity may so require.

MCL 92.2; MSA 5.1750 provides:

> The council may make and establish rules for the regulation and government of the police, prescribing and defining the powers and duties of policemen and nightwatchmen, and shall prescribe and enforce such police regulations as will most effectually preserve the peace and good order of the city, preserve the inhabitants from personal violence, and protect public and private property from destruction by fire and from unlawful depredation. The mayor is hereby authorized, whenever he shall deem it necessary for the preservation of peace and good order in the city, to appoint and place on duty such number of temporary policemen as in his judgment the emergencies of the case may require; but such appointments, unless made in accordance with some ordinance or resolution of the council shall not continue longer than 3 days.

fare of the city, and for the separate incorporation thereof: Provided, however, That these provisions shall not be construed to extend to and include public schools;

(2) For altering, amending or repealing any special act affecting any municipal concerns or existing municipal department, but the department in control of the public schools shall not be construed to be a municipal department;

(3) *For the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state.* [Emphasis added.]

The general grant of power to municipalities which is authorized by Const 1963, art 7, § 21, and which is activated in the various state statutes concerning the charters for local municipalities, is further highlighted in Const 1963, art 7, § 22:

Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.

There is simply no basis to assume that Grand

Rapids does not have the power to authorize, implicitly or expressly, its police department to engage in activities incident to valid arrests such as impounding vehicles. Art 7, § 22 expressly states that such cities "have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law." The Convention Comment to art 7, § 22 states that "[t]he new language is a more positive statement of municipal powers, giving home rule cities and villages full power over their own property and government, subject to this constitution and law."

The Grand Rapids City Charter establishes the city manager as the director of public safety, in charge of the police department. Grand Rapids Charter, § 96(a). The city manager "shall prescribe all rules and regulations for the control and management of the police force . . . ." § 96(d). Most important is the general grant of authority given by the charter to police officers:

> The Director of Public Safety and all City police officers and detectives shall have and possess the power and authority usually conferred upon metropolitan police. [§ 96(g).]

So long as the local municipalities and their agents, such as the police in the instant case, do not circumvent the constitution or a preeminent state statute, the constitutional authority of the municipality is not abridged. Absent such a violation, this Court cannot hinder the local government's exercise of the police power. In the instant case, the parties have not briefed or argued whether or not the Grand Rapids police possess

the basic power to impound cars.[12] Given the constitutional framework and the apparent grants of authority to the police, there is no basis in this case for abridging that authority.

### IV. CONCLUSION

There was no constitutional or statutory violation by the Grand Rapids police in their impoundment and inventory of Sandra Krezen's car. Under the facts of this case, the police activity was reasonable. The impoundment and inventory were part of a normal caretaking function, carried out pursuant to standard departmental policy which was within the constitutionally mandated authority of the municipal government. We would, therefore, reverse the decision of the Court of Appeals and reinstate the defendant's conviction.

BRICKLEY and RILEY, JJ., concurred with BOYLE, J.

WILLIAMS, C.J. (*concurring* with Justice BOYLE). While I am in accord with section I of Justice BOYLE's opinion and I agree with her statement that the true issue is the constitutionality of the initial impoundment, I am unable to agree with her resolution of that issue. Because defendant was not arrested while in her car, her car was lawfully parked and locked at the time of her arrest and there was no evidence that her vehicle was in any way "impeding traffic or threatening public safety and convenience . . . ," *South Dakota v Opperman,* 428 US 364, 369; 96 S Ct 3092;

---

[12] Part IX of Justice LEVIN's opinion relies predominantly upon his conclusion that the impoundment in the instant case was unlawful under Michigan common law. To the contrary, a majority of this Court agrees that the impoundment was within the lawful authority of the police.

49 L Ed 2d 1000 (1976), I am not persuaded that the police officers acted reasonably when they impounded the car.

However, because defendant's purse was in plain view on the front seat of her car, I agree with Justice Boyle that the police could not have reasonably left it there. (*Ante*, p 688, n 3.) Since returning the purse to defendant would have inevitably led to the discovery[1] of the cocaine in her purse, I agree that the decision of the Court of Appeals should be reversed.

Levin, J. (*dissenting*). Sandra Lee Krezen was convicted of possession of less than fifty grams of cocaine with intent to deliver[1] and of possession of less than fifty grams of cocaine.[2] The Court of Appeals reversed and remanded for a new trial on the ground that evidence obtained during an inventory of the contents of her automobile after it was impounded following her arrest had not been lawfully obtained because the impoundment was improper.[3] We would affirm.

I

The Grand Rapids Police Department had been notified by authorities in San Diego, California, that a package en route by air freight to Grand Rapids contained cocaine. Police officers at the Kent County Airport observed Krezen claim the package, and she was then arrested.

Krezen had driven to the airport, parked, and locked her automobile in an air freight parking

---

[1] *People v Kusowski*, 403 Mich 653, 662; 272 NW2d 503 (1978) (Williams, J., concurring); *Nix v Williams*, 467 US 431; 104 S Ct 2501; 81 L Ed 2d 377 (1984).

[1] MCL 333.7401(1), (2)(a)(iv); MSA 14.15(7401)(1), (2)(a)(iv).

[2] MCL 333.7403; MSA 14.15(7403).

[3] *People v Krezen*, 143 Mich App 34; 371 NW2d 882 (1985). One judge dissented.

lot.[4] After Krezen was arrested, the officers impounded her automobile and inventoried its contents. They discovered three hypodermic syringes, a brown vial containing cocaine residue, and "tooters," instruments used for snorting cocaine. These were found in Krezen's purse which had been lying visibly on the front seat of the automobile. Krezen's conviction for possession of less than fifty grams of cocaine is based on the cocaine residue in the brown vial.

The officers testified at the evidentiary hearing, on Krezen's motion to suppress the evidence seized in the automobile, that they had inventoried the contents of the automobile on a Grand Rapids Police Department inventory form pursuant to departmental policies and procedures.[5] They said they had no expectation of finding evidence when they commenced to inventory the contents of the automobile. They acknowledged that the automobile was legally parked. Because it was in an area away from the main parking area, there was relatively little traffic. Krezen was arrested on Saturday, and would not be arraigned until Monday. Both officers had been sued civilly for failing to follow departmental impounding procedures allegedly resulting in the loss of valuables belonging to the arrested person.[6]

---

[4] Krezen then proceeded to the airline service desk to claim the package. She signed for it in the name of Kelly Heaton. She was arrested by the police before she left the air freight office.

[5] An officer testified that the policy is that "[w]hen there's a vehicle involved and we make an arrest, department policy is we take that car for safekeeping unless that car is released to another person by authority of the owner."

[6] One officer testified that in another case he had arrested a person in a parking lot who was not driving. The person arrested was seated on the passenger side of the vehicle. After placing him under arrest, the officer advised him that he was taking his automobile for safekeeping so that he would not lose valuables in the automobile. This offer was declined, the owner saying he wished the driver of the automobile to retain possession of the vehicle, and the officer had

There was evidence that Krezen did not willingly turn the keys of her automobile over to the police. She testified that the officers asked her for the keys, that she hesitated to give the keys to them, and that the officers said that if she did not give them the keys she would be responsible for them breaking into her automobile. An officer testified that at first Krezen refused, and then she gave them the keys. When asked whether they had threatened to rip the doors off, the officer responded: "We carry an instrument in our vehicle that we can open any car door with. I wouldn't have to rip the doors off." When asked, "[d]id you threaten to tear the trunk open?", he responded: "I said we would pry the trunk open."

In denying the motion to suppress, the judge did not find whether Krezen had turned the keys over to the police voluntarily.[7]

---

agreed to that request. The person who was arrested claimed that when he went to pick up his automobile his valuables were gone, and then commenced an action against the officer claiming that the failure to follow departmental procedures regarding the impounding of the automobile was a cause of the loss. The other officer testified that he also had been named in this lawsuit where, pursuant to the request of the person arrested, a vehicle had not been impounded.

[7] The judge said:

The facts in this case, as I understand them, indicate that the police in this area had received a report that a package was coming into the air freight office of the airport on 44th Street; that the package contained cocaine; and that they were to intercept the package and to arrest the person picking up the package.

They have indicated that they have done this. They saw the person arrive, saw the package being taken out of the airplane, saw the Defendant come in and ask for the package. As a matter of fact, they saw the Defendant drive up outside the air freight terminal and proceed into the air freight office.

They have testified in this case that after the arrest, under standard police policy, they were to take the vehicle in which the Defendant drove up for safekeeping. Their only question to her was whether she owned the vehicle. They had seen her drive up in it and knew that it was a vehicle that she had been operating, and Officer Price indicated to her that the only

II

The Court of Appeals reviewed decisions of the
United States Supreme Court concerning impound-
ment and inventorying property, *South Dakota v
Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d
1000 (1976), *Cady v Dombrowski,* 413 US 433, 441;
93 S Ct 2523; 37 L Ed 2d 706 (1973), and this
Court's decision in *People v Long (On Remand),*
419 Mich 636, 649; 359 NW2d 194 (1984).

In *South Dakota v Opperman,* the United States
Supreme Court held that the police had not vio-
lated the Fourth Amendment of the federal consti-
tution when they conducted a routine inventory
search of an automobile lawfully impounded for
violating a municipal parking ordinance. In *Cady
v Dombrowski, supra,* pp 442-443, the police had
also properly "exercised a form of custody or con-
trol over the" vehicle. It had been "disabled as a
result of [a one-car] accident, and constituted a
nuisance along the highway. Respondent, being
intoxicated (and later comatose), could not make
arrangements to have the vehicle towed and
stored. At the direction of the police, and for

reason they wanted the keys were to check the items inside the
car, to protect these items from being stolen, and they told her
that they needed the keys because they were taking the car in
for safekeeping.

They further testified, each of them, that they had no reason
to believe that there were any contraband items inside of the
vehicle.

It is the opinion of this Court that the search of the vehicle
was an inventory search and obviated the need for a warrant;
that the reason for the search was to protect the items from
being stolen or protect the police against any claims of loss or
stolen property; that it was not for the pretext of trying to
unearth any further criminal activity upon the part of the
Defendant.

It is my opinion that it was a proper inventory search, and
the motion to suppress should be denied.

elemental reasons of safety, the automobile was towed to a private garage."[8]

In *People v Long, supra,* p 649, this Court said that when "a motor vehicle has been lawfully impounded," the Fourth Amendment does not bar the police from conducting an inventory search pursuant to established standard procedures.[9]

The Court of Appeals observed that impoundment and inventory procedures have been justified "on three distinct grounds: (1) the protection of property while held in police custody; (2) protection of the police against claims over lost or stolen property; and (3) protection of the police from potential danger."[10]

The Court of Appeals said that "the standard policy of the Grand Rapids Police Department to impound and inventory all motor vehicles following the arrests of their drivers"[11] was "simply too broad when viewed against the backdrop of the Fourth Amendment. Instead of allowing an officer to exercise his individual discretion, such blanket policies encourage police to impound and inventory each and every vehicle whose driver is taken

[8] The police entered the vehicle in an effort to locate a revolver that they had reason to believe might there be found. The driver had identified himself as a police officer, and department regulations required him to have his gun with him at all times and it was not on his person. The police were concerned, said the Court, "for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." *Cady v Dombrowski, supra,* p 447.

[9] The defendant was arrested for possession of marijuana after his automobile was pursued by the police who had observed it being driven at excessive speed. The defendant was alone and it was after midnight. The automobile was impounded. The question was whether two paper bags thereafter found in the trunk containing marijuana were admissible in evidence. This Court held that opening the trunk could not be sustained as an inventory search because the police department had no established standard procedure for conducting inventory searches.

[10] *Krezen, supra,* p 39.

[11] *Id.,* p 40.

into custody, regardless of whether such action is necessary or reasonable under the circumstances. Procedures to safeguard both motor vehicle and the police in such situations can and must be better tailored to fit the dictates of our state and federal constitutions."[12]

The Court said that "[t]he burden is on the state to show that any impoundment is both necessary and reasonable."[13] The "mere possibility of theft or vandalism to the contents of a vehicle left unattended, which, if realized, may in turn lead to claims against the police for loss or damages, does not compare in importance with the preservation of basic constitutional guarantees."[14] The Court held:

> [W]here the owner or permissive user of a motor vehicle is present and not incapacitated, it is imminently reasonable for the arresting officer to first obtain the owner's consent to impound and search the vehicle or otherwise allow the owner a reasonable opportunity to make alternate arrangements to secure the vehicle.[15]

The Court further held:

> [I]mpoundment is not necessary where a car is

---

[12] Id.
[13] Id., p 41.
[14] Id., p 40.
[15] Id., p 41. The Court continued:

> For instance, an owner might make a reasonable decision to leave his vehicle lawfully parked at or near the point of his arrest, albeit unattended, if his detention is expected to be merely temporary. Or an owner might decide to give physical custody of his vehicle to a friend, relative, or passenger. By making such arrangement in lieu of impoundment, an owner may also avoid the incidental costs (towing and storage) that would otherwise be assessed against him.

lawfully parked, does not impede the regular flow
of traffic, and does not otherwise pose any threat
to public safety. If an owner or permissive user
neither requests that his car be impounded nor
gives his consent, he will be presumed to have
assumed the risk for any claims of loss or damage
that may arise.[16]

The Court concluded that the decision to im-
pound Krezen's automobile was neither necessary
nor reasonable and, therefore, that the subsequent
inventory search was invalid. Accordingly, Krez-
en's conviction based on possession of the brown
vial containing cocaine residue was reversed.

The Court also concluded that Krezen's convic-
tion of possession of cocaine with intent to deliver
should be reversed and remanded for a new trial
because it could not say that the introduction of
the evidence obtained as a result of the search of
Krezen's purse was harmless. Krezen testified that
she thought the package she had picked up at the
airport contained money owed her by her boy-
friend.

The dissenting judge thought that Krezen's
"purse may have offered an attractive incentive to
potential thieves."[17] "Furthermore, as defendant

---

16 *Id.* The Court continued:

> We note that similar procedures are required in other juris-
> dictions. See, *e.g., State v Mangold,* 82 NJ 575; 414 A2d 1312
> (1980); *State v Thomason,* 153 Ga App 345; 265 SE2d 312
> (1980); *People v Schultz,* 93 Ill App 3d 1071; 49 Ill Dec 362; 418
> NE2d 6 (1981); *State v Gaut,* 357 So 2d 513 (La, 1978); *Virgil v
> Superior Court of County of Placer,* 268 Cal App 2d 127; 73 Cal
> Rptr 793 (1968). See generally 68 Am Jur 2d, Searches &
> Seizures, § 57, p 708, and 48 ALR3d 537. [*Id.,* pp 41-42.]

17 *Id.,* p 43. The judge continued:

> I do not agree that the police have a duty to ascertain a
> defendant's ability to make independent arrangements for an
> automobile. Even if defendant had made suitable provisions for

was taken into custody on Saturday morning, she was going to be detained until her arraignment on Monday morning at least. The risk of harm to her vehicle would appreciably increase each night that it was left unattended in this isolated parking lot."[18]

### III

We agree with the Court of Appeals.

There was no issue whether the defendant's vehicle was properly impounded in *South Dakota v Opperman,* where the vehicle was illegally parked, or in *Cady v Dombrowski,* where the vehicle was disabled, the defendant was arrested for intoxication and there was no passenger in the vehicle, or in *People v Long.*[19] In those cases, the Courts, proceeding on the basis that the vehicle was lawfully impounded, addressed the question whether evidence obtained during an inventory of the contents of the vehicle was properly seized.

In the instant case, we need not address the inventory question[20] because we conclude that nei-

> her vehicle, the police cannot be required to wait for her party to arrive to secure the car. As even a short period of inattention could result in property damage or theft, I find that impoundment was a reasonable alternative. [*Id.,* p 44.]

[18] *Id.,* pp 43-44.

[19] It does not appear whether the vehicle was disabled. It came to a stop following the chase (see n 9) "with the front of the car in a shallow ditch and the back of the car on the roadway." One of the officers "had formed the opinion that the defendant 'appeared to be under the influence of something.'" It was after midnight and the defendant was alone in this apparently rural setting. *People v Long, supra,* p 644. In all events, no issue was raised concerning the validity of the impoundment; the only issue concerned the validity of the inventory made after the impoundment.

[20] The people's reference to American Law Institute, Model Code of Pre-Arraignment Procedure (Proposed Official Draft, April 15, 1975), § 230.6(3) is inapposite because it speaks of the propriety of a search of vehicles impounded, and does not address the question when a vehicle may be impounded.

ther Krezen's automobile nor her purse was properly impounded.

### A

Krezen was arrested before she left the airline freight office. Her automobile was legally parked in a nearby parking lot.

There was no basis for a search of Krezen's automobile as an incident to her arrest. There is no suggestion that it was necessary to impound the vehicle, or to inventory its contents, or to search Krezen's purse, to protect the police from potential danger.

### B

In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), this Court provided governmental agencies and employees, including police officers, with broad immunity from tort liability.

1986 PA 175[21] amended the governmental tort liability act to define broadly the scope of government immunity.[22] The act also provides governmental employees with broad immunity from tort liability.[23]

---

[21] This act is effective as to causes of action arising on and after July 1, 1986.

[22] Sec. 1. As used in this act:

\* \* \*

(f) *"Governmental function" is an activity which is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law.*

[23] Sec. 7.

\* \* \*

Before Krezen's automobile was impounded, neither the automobile nor the purse was in the custody of the police. Absent the impoundment, there would be no bailment and the police would have had no responsibility for the care of Krezen's property. No claim could properly have been asserted against the police for loss or theft of property that was not in the custody of the police.

While the courts are open to the filing of both valid and invalid claims, it would be disproportionate to hold that the law authorizes the police to impound personal property they have no duty to safeguard simply to protect against unfounded claims that they should have safeguarded the property. It would be chimerical to suggest that the City of Grand Rapids or the police officers would have been held liable in damages for loss or damage to Krezen's automobile or purse if they had not volunteered to take steps to protect such property.

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge or a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

(3) Subsection (2) shall not be construed as altering the law of intentional torts as it existed prior to the effective date of subsection (2).

IV

Courts generally have concluded that to justify impoundment something more must be shown than simply that the vehicle would otherwise be left unattended.[24]

---

[24] The Supreme Court of Kentucky limits impoundments to four situations.

1. The owner or permissive user consents to the impoundment;

2. The vehicle, if not removed, constitutes a danger to other persons or property or the public safety[2] and the owner or permissive user cannot reasonably arrange for alternate means of removal;

3. The police have probable cause to believe both that the vehicle constitutes an instrumentality or fruit of a crime and that absent immediate impoundment the vehicle will be removed by a third party; or

4. The police have probable cause to believe both that the vehicle contains evidence of a crime and that absent immediate impoundment the evidence will be lost or destroyed. [*Wagner v Commonwealth,* 581 SW2d 352, 356 (Ky, 1979).]

---

[2] An illegally parked vehicle would constitute a danger to public safety under this exception to the warrant requirement and could be lawfully impounded.

---

The Florida Supreme Court has stated that necessary and reasonable impoundments include:

(1) an unattended car illegally parked or otherwise illegally obstructing traffic, an illustration of which is the factual situation in the *Opperman* case; (2) an unattended car at the scene of an accident where the driver is physically or mentally incapable of deciding what steps to take to deal with his vehicle such as might occur when the driver is seriously injured, mentally incapacitated, or severely intoxicated; (3) an abandoned vehicle; (4) a mechanically defective vehicle which, if driven, could menace others on the public highway; (5) a vehicle identified as stolen. There may be other circumstances; this list is not all-inclusive. [*Miller v State,* 403 So 2d 1307, 1313 (Fla, 1981).]

The Supreme Court of West Virginia mentioned "valuables in plain sight" as a factor to be considered in determining whether impoundment is lawful:

Courts generally have said that, even where impoundment might in the circumstances be lawful, the owner or possessor of a vehicle, if available and physically and mentally capable, must be given a reasonable opportunity to make an alternative disposition of the vehicle before the police may impound it for the sole or primary purpose of protecting it and the contents from danger, and that the failure to permit such alternate disposition renders an impoundment and subsequent inventory search invalid.[25]

(1) there was an initial lawful impoundment of the vehicle; (2) the driver wasn't there to make other arrangements at the time of impounding for safeguarding of his belongings; (3) the inventory itself was prompted by a number of valuables in plain view inside the car; (4) there was no suggestion that the inventory search was a pretext for conducting an investigative search. [*State v Goff,* 272 SE2d 457, 460 (W Va, 1980).]

In *State v Slockbower,* 79 NJ 1, 4-5; 397 A2d 1050, 1054-1055 (1979), the Supreme Court of New Jersey said it would be unreasonable to impound an automobile unless the driver consents or is given reasonable opportunity to make other arrangements. In *State v Lunsford,* 655 SW2d 921, 922 (Tenn, 1983), the Supreme Court of Tennessee said that the police must advise a present, silent arrestee that the automobile will be impounded unless he provides reasonable alternatives. See also *Drinkard v State,* 584 SW2d 650 (Tenn, 1979).

[25] *People v Nagel,* 17 Cal App 3d 492, 497; 95 Cal Rptr 129 (1971); *Virgil v Superior Court,* 268 Cal App 2d 127, 132-133; 73 Cal Rptr 793 (1968); *Arrington v United States,* 382 A2d 14, 18 (DC App, 1978); *Miller v State, supra; Strobhert v State,* 165 Ga App 515, 516; 301 SE2d 681 (1983); *People v Velleff,* 94 Ill App 3d 820, 823-824; 419 NE2d 89 (1981); *State v Kuster,* 353 NW2d 428, 432 (Iowa, 1984); *Estep v Commonwealth,* 663 SW2d 213, 216 (Ky, 1983); *State v Rome,* 354 So 2d 504 (La, 1978); *State v Goodrich,* 256 NW2d 506, 507, 509, 511 (Minn, 1977); *State v Slockbower,* n 24 *supra,* pp 9-12; *Drinkard v State,* 584 SW2d 650, 653 (Tenn, 1979); *Pearson v State,* 649 SW2d 786, 790 (Tex Civ App, 1983); *Smyth v State,* 634 SW2d 721, 723 (Tex Crim App, 1982) (en banc); *State v Houser,* 95 Wash 2d 143, 153; 622 P2d 1218 (1980) (en banc).

Still other courts have said that impoundment is unreasonable where a passenger or other qualified driver is capable of assuming responsibility for a vehicle contemporaneously with an arrest. *State v Reynoso,* 41 Wash App 113; 702 P2d 1222 (1985) (impoundment improper where owner of vehicle, not present, was willing to pick up vehicle); *State v Thomason,* 153 Ga App 345; 265 SE2d 312 (1980) (impoundment unreasonable where police refused request for driver's

Many courts have said that impoundment is ordinarily unlawful where the vehicle is legally parked, particularly if it is parked off-street.[26] Krezen's automobile was legally parked in an off-street lot at the time of her arrest.

It also has been said that impoundment is unlawful where the person arrested is not near the automobile when arrested.[27] Krezen was not near her automobile when arrested.

husband to be called to come for vehicle); *State v McDaniel,* 156 NJ Super 347; 383 A2d 1174 (1978) (impoundment unlawful where driver or passenger could have moved vehicle to a lawful parking area and locked it). See also *State v Bales,* 15 Wash App 834; 552 P2d 688 (1976); *State v Goodrich, supra; Altman v State,* 335 So 2d 626 (Fla App, 1976); *Gunn v State,* 336 So 2d 687 (Fla App, 1976); *State v Gaut,* 357 So 2d 513 (La, 1978); *Tolbert v State,* 348 So 2d 623 (Fla App, 1977); *Jones v State,* 345 So 2d 809 (Fla App, 1977).

A few courts have found impoundment proper where there is a danger of vandalism or theft because of valuables visible in a vehicle, or because the surrounding area has a high crime rate. In *State v Moak,* 427 So 2d 1233 (La App, 1983), impoundment was found to be reasonable where valuables could be seen inside a truck and in its bed although the truck was parked in a gas station.

[26] *State v Osborn,* 426 So 2d 323 (La App, 1983) (impoundment unreasonable where vehicle parked in shopping center lot); *Granville v State,* 348 So 2d 641 (Fla App, 1977) (improper impoundment where vehicle parked in friend's driveway and defendant was arrested at a safe distance from the vehicle); *Morton v State,* 452 So 2d 1361 (Ala Crim App, 1984) (impoundment unreasonable where vehicle parked in service station); *Weed v Wainwright,* 325 So 2d 44, 45 (Fla App, 1976) (impoundment improper where arrestee's vehicle parked in store parking lot); *Dixon v State,* 23 Md App 19, 38-39; 327 A2d 516 (1974) (necessity for impounding vehicle not demonstrated where vehicle was in public parking lot at time of arrest); *State v Slockbower,* n 24 *supra,* pp 11-13 (impoundment improper since vehicle could have been safely locked at scene of arrest); *Kelly v State,* 607 P2d 706, 708 (Okla Crim App, 1980) (impoundment improper where vehicle parked in parking lot of business establishment); *State v Thirdgill,* 46 Or App 595, 599-600; 613 P2d 44 (1980) (impoundment improper where vehicle was in restaurant parking lot); *Rodriguez v State,* 641 SW2d 955, 958 (Tex Crim App, 1982) (impoundment improper where no showing vehicle was illegally parked in an alley). Similarly see *United States v Pappas,* 735 F2d 1232, 1234 (CA 10, 1984) (improper impoundment where vehicle was parked in parking lot of a club).  ·

[27] In *Benavides v State,* 600 SW2d 809 (Tex Crim App, 1980), impoundment was found improper where the defendant was arrested two or more blocks away from his legally parked automobile. Cf. *Granville v State,* n 26 *supra; State v Kuster,* 353 NW2d 428 (Iowa, 1984).

Still other courts have said that the police may not impound an automobile solely to protect it and its contents. In *People v Miller,* 7 Cal 3d 219, 223-224; 101 Cal Rptr 860; 496 P2d 1228 (1972), the California Supreme Court said that the danger of theft from leaving defendant's electronic equipment visible in the vehicle did not justify impoundment when the vehicle was parked in a private lot. In *Gunn v State,* 336 So 2d 687, 689 (Fla App, 1976), a Florida appeals court said that even where there is a possibility that a vehicle will be damaged, a driver should be allowed to assume that risk and the responsibility for any damage rather than have the vehicle impounded.

Locking and leaving a vehicle is considered a reasonable alternative disposition where a vehicle is legally parked; in *Tolbert v State,* 348 So 2d 623 (Fla App, 1977), where an automobile was lawfully parked in an alley in a high-crime area, a Florida appeals court held that simply leaving the locked vehicle would have been a reasonable alternative to impoundment.

Impoundment was found to have been proper in exceptional circumstances.[28]

---

[28] In *State v Roberge,* 642 SW2d 716 (Tenn, 1982), impoundment was held reasonable where an out-of-state vehicle with two drunken men and an underage passenger were pulled over on a highway, at night, in heavy rain, where leaving the vehicle on emergency strip or nearby rest stop would have obstructed traffic or placed the vehicle in serious danger of being hit. In *Jones v State,* 407 So 2d 870 (Ala Crim App, 1981), impoundment was found reasonable where the driver ran away, the passenger was incoherent, and the vehicle was blocking a private driveway. In *State v Greenway,* 15 Wash App 216; 547 P2d 1231 (1976), impoundment was found proper where a driver was arrested on a felony charge, his vehicle was parked in a restricted area where vehicles were removed from time to time due to a sewer project, and the court was concerned that he would be incarcerated for a considerable length of time.

In *State v Callaway,* 106 Wis 2d 503; 317 NW2d 428 (1982), the Wisconsin Supreme Court found impoundment reasonable where a vehicle was stopped in a no-parking area. Although on-street parking

## V

The danger of theft or vandalism because Krezen's purse was visible on the front seat of her automobile did not justify impoundment of her automobile or of the purse. The police had no obligation to concern themselves with the safekeeping of Krezen's property. When they did so, Krezen should have been given the choice of what to do, including leaving the automobile where it was rather than for it to be impounded. An officer might have offered to place her purse in the trunk of her automobile, or to hand it to her after it had been searched for weapons.[29] The police neither inquired what Krezen wished to be done with her automobile or her purse, nor made any effort to allow her to provide for their safekeeping.

In sum, the police had no duty or need to impound Krezen's automobile either to protect her purse or other contents of the automobile or the automobile itself. We conclude that the police were not authorized to impound Krezen's automobile or her purse.

## VI

We do not invoke either the federal[30] or state[31]

was allowed until 2 A.M., some twenty feet away, the court decided that the arrestee's inability to pay his fine meant the vehicle would have been illegally parked. In *Villarreal v State,* 703 SW2d 301 (Tex Crim App, 1985), the court decided that the police would have been derelict in their duty if they had left a vehicle on the street, unprotected, with the keys in it when defendant was arrested for a serious offense and was unlikely to return shortly.

[29] Because Krezen might have properly asked a police officer who made such an offer to place her purse in the trunk of the automobile it does not appear that the drug paraphernalia or brown vial would have been inevitably discovered.

[30] US Const, Am IV.

[31] Const 1963, art 1, § 11.

constitutional limitations on search or seizure in reaching that conclusion.[32]

Before one reaches the question whether police conduct is violative of a constitutional limitation, there is the preliminary question whether the police conduct is authorized by statute or by judicial decision declaring the common law of this state. The police are creatures of statute, and no authority is conferred on them under the constitution of this state. The police have no authority except such as may be conferred expressly by statute or necessary implication or by judicial decision declaring the common law of the state.

In contrast with the detailed statutory provisions spelling out the authority of the police and others to make arrests,[33] the statutory authority to search and seize[34] is sparse. There is nothing pertaining to impoundment or inventory.

No statute or judicial decision authorizes or empowers the police to impound or seize private

[32] It is a familiar principle that courts avoid grappling with constitutional questions if the cause can be decided on other grounds. See *Ashwander v Tennessee Valley Authority,* 297 US 288, 341-356; 56 S Ct 466; 80 L Ed 688 (1936) (Brandeis, J.); Nowak, Constitutional Law (2d ed), ch 2, § IV, pp 7, 93; *Taylor v Auditor General,* 360 Mich 146, 154; 103 NW2d 769 (1960).

To be sure, the decisions cited in footnotes 24 through 28 pursue essentially a constitutional analysis. This I expect is a result of the leadership of the federal courts in imposing limitations on police conduct on the basis of the federal constitution before the state courts had developed a search and seizure jurisprudence in the exposition of the state's statutory, common, or constitutional law. The analysis and structure provided by the federal decisions tended to be adopted, in the absence of a developed state jurisprudence, as part of state jurisprudence without recognition either that the authority of the police to search and seize might be analyzed as a question of state law (common law, statutory law, or constitutional law) or that the limitation imposed by the Fourth Amendment did not preclude the development of state search and seizure jurisprudence (common law, statutory law, or constitutional law) that did not authorize conduct proscribed by the Fourth Amendment.

[33] MCL 764.1-764.24; MSA 28.860-28.883.

[34] MCL 764.25-764.25b; MSA 28.884-28.884(2).

property without limitation except such as the federal or state constitutions impose.

In the absence of statutory authority, it becomes a matter for judicial or common-law decision whether the police are authorized to impound or move private property in a particular case.

In some cases it will be clear, considered as a question of common law, that the police are empowered to act, as where a disabled vehicle or a parked vehicle represents a hazard to users of a street or highway, or where the owner or driver is disabled or intoxicated and cannot properly move the vehicle or consent or refuse to consent to removal, or where the vehicle has been vandalized or stripped or reported as stolen.[35] In the instant case, the police were not authorized by the law of this state to impound or move Krezen's legally parked automobile.[36]

## VII

Although the police had no obligation to concern themselves with the safekeeping of Krezen's property, it would have been entirely proper for them to offer to assist, or respond affirmatively to a request for assistance from, her in safeguarding her property. Whenever the police choose to offer to assist, or to respond affirmatively to a request

[35] These are examples, and no effort has been made to anticipate or compile an exhaustive list.

[36] Since the police were not authorized to impound Krezen's automobile, they were not authorized to examine or inventory the contents of her purse, and the Court of Appeals correctly concluded that the evidence obtained when her purse was opened should be suppressed. In *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), and *People v Sherbine,* 421 Mich 502, 512; 364 NW2d 658 (1984), this Court held that evidence obtained by the police as a result of conduct in violation of statutory proscription should be suppressed. In the instant case, we would hold that evidence obtained by the police as a result of conduct contrary to judicial decision defining the common-law power of the police should be suppressed.

for assistance from, an arrested person in safe-
guarding his property, they should advise the ar-
rested person, unless so intoxicated or disabled
that he cannot act on advice, that he will be given
an opportunity at the station house[37] to make his
own arrangements for safeguarding his property if
he prefers to do so, or that he may entrust the
property to a person of suitable age and condition
who may be accompanying him. In those cases
where they are authorized by law to do so, the
police should advise the arrested person before
impounding or moving private property, unless so
intoxicated or disabled that he cannot act on
advice, that he may entrust the property to such a
person accompanying him or, if there is time to
make alternative arrangements before the prop-
erty must or will be removed, that he will be given
an opportunity at the station house to make his
own arrangements for safeguarding his property if
he prefers to do so.[38]

## VIII

The people do not separately state a question or
argue that the admission in evidence of the drug
paraphernalia and the brown vial found by the
police in Krezen's purse was harmless error. That
issue, not having been briefed or argued, is not
before us.

## IX

The lead opinion, in stating that the federal

[37] The officer may but is under no obligation to provide that oppor-
tunity at the scene of the arrest.

[38] See *Miller v State,* n 24 *supra; Wagner v Commonwealth,* n 24
*supra; State v Slockbower,* n 24 *supra; State v Rome,* n 25 *supra;
Drinkard v State,* n 24 *supra; State v Goodrich,* n 25 *supra; State v
Kuster,* n 25 *supra.*

constitution was not violated by the impoundment and inventory of Krezen's automobile relies on the decision of the United States Supreme Court in *South Dakota v Opperman, supra,* where, in the words of the lead opinion, "the United States Supreme Court upheld an inventory of a lawfully impounded vehicle." (The vehicle had been impounded for violation of a municipal parking ordinance.) The lead opinion continues stating that "The inventory [in *Opperman*] was seen as a caretaking function rather than an investigative search."[39] The "caretaking" function analysis is not, however, applicable unless there has been a lawful impoundment.

The concurring opinion, acknowledging that *South Dakota v Opperman* did not authorize the impoundment of a lawfully parked automobile that was not in any way impeding traffic or threatening public safety and convenience, appears to advert to the "caretaking" function in stating "that the police could not have reasonably left" Krezen's purse in plain view on the front seat of her automobile.[40] The United States Supreme Court has not recognized a "caretaking" function under the Fourth Amendment except in the context of a lawful impoundment; unless the vehicle has been lawfully impounded, an inventory search and seizure cannot be justified on the basis of the Fourth Amendment caretaking rationale elucidated by the United States Supreme Court. Here there was no lawful impoundment.

### A

The lead opinion acknowledges that "[t]he true issue is whether the initial impoundment of Krez-

[39] *Ante,* p 684.
[40] *Id.,* p 698.

en's car was a constitutional violation." Reliance is then placed on an "unclear"[41] Grand Rapids police departmental policy. The opinion states that while impoundment might constitute an unreasonable seizure and violate the Fourth Amendment in particular factual situations, "the specific facts in this case render the impoundment decision eminently reasonable."[42]

Reference is then made to *Cooper v California,* 386 US 58, 62; 87 S Ct 788; 17 L Ed 2d 730 (1967), where the United States Supreme Court said, "[W]e cannot hold unreasonable under the Fourth Amendment the examination or search of a car *validly held by officers for use as evidence in a forfeiture proceeding."* (Emphasis supplied.) *Cooper,* thus, like *Opperman,* upheld the inventorying of an automobile that had been validly seized by the police and lends no support for the conclusion of the lead opinion on the "true issue" of whether the initial impoundment of Krezen's automobile was a constitutional violation.

The lead opinion next refers to *Cady v Dombrowski,* where the Court upheld a search of the trunk of an automobile. *Cady,* too, is inapposite because the police had the undoubted right, as the United States Supreme Court said, to exercise a form of custody or control over the vehicle which had been disabled as a result of a one-car accident and constituted a nuisance along the highway; the respondent was so intoxicated, as the United States Supreme Court carefully noted, that he could not make arrangements to have the vehicle towed and stored.[43]

The lead opinion then states its conclusion, which rests on the inapposite *Cady* decision and

[41] *Id.,* p 685.

[42] *Id.,* pp 685, 686.

[43] See n 8 and accompanying text.

five decisions of other courts, all but one of which
are distinguishable.

> In the instant case, the impoundment of Krez-
> en's car without a warrant was not unreasonable
> per se. As in *Cady*, the car was not on the prem-
> ises of its owner, and, once the arrest occurred, it
> was no longer in the owner's actual possession.
> While "impounding" a house without a warrant
> just because the defendant was arrested outside of
> the house could, under certain circumstances, be
> unreasonable per se, a car is a different matter. Its
> very nature as a transportable nonfixed item
> makes it and its contents more subject to theft or
> damage. *Cady*, pp 441-442. A number of courts
> have recognized that the possibility of theft or
> vandalism is a valid reason for impounding a car
> upon the arrest of the driver, especially where no
> other person is present to take control of the car.
> See, e.g., *United States v Staller*, 616 F2d 1284 (CA
> 5, 1980); *United States v Scott*, 665 F2d 874 (CA 9,
> 1981); *Cabbler v Superintendent, Virginia State
> Penitentiary*, 528 F2d 1142 (CA 4, 1975); *State v
> Sims*, 426 So 2d 148 (La, 1983). Other courts have
> recognized that leaving a car parked in a private
> location may be a nuisance. *United States v
> Brown*, 787 F2d 929 (CA 4, 1986). The impound-
> ment was a caretaking function rather than an
> investigative one, instituted according to standard
> departmental policy to protect the defendant and
> the police from unnecessary thefts, recriminations,
> and civil suits.[44]

The lead opinion thus would hold that impound-
ment of Krezen's automobile was justified on the
bases "that the possibility of theft or vandalism is
a valid reason for impounding a car upon the
arrest of the driver" or that "leaving a car parked
in a private location may be a nuisance." The only
case cited which might be said to support allowing

---

44 *Ante*, pp 687-688.

impoundment on those bases is *United States v Staller, supra,* 1290, where the Court held an impoundment reasonable where the automobile was legally parked in a mall parking lot; no valuables were visible but the police felt that "a car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft."

The other four cases cited do not support the propositions advanced in the lead opinion. The automobile in *United States v Scott* could not be locked nor the windows closed to safeguard the contents. A United States treasury check was removed by the police for safekeeping. The defendant had failed to secure his property although he had assured the police that he had done so. Krezen was not given the option to secure her automobile.

In *Cabbler v Superintendent* the automobile was parked in a hospital emergency driveway when the driver was arrested. Clearly, an automobile in a hospital emergency driveway is distinguishable from an automobile, such as Krezen's, that was legally parked in an airport parking lot.

While the Court in *State v Sims* noted that the automobile might possibly have been vandalized, it also was stated that an officer was concerned that the automobile was obstructing the view of drivers turning onto a highway. Krezen's automobile was, again, legally parked and not obstructing the views of drivers. Further, the Supreme Court of Louisiana considers as a factor whether the driver was asked if he consented to a search, if the automobile contained valuables, or if he had consented to the failure to afford him the protection of an inventory search.[45]

In *United States v Brown* the driver had pulled

[45] *Id.* at 153; *State v Hardy,* 384 So 2d 432 (La, 1980); *State v Killcrease,* 379 So 2d 737 (La, 1980); *State v LaRue,* 368 So 2d 1048 (La, 1979).

into a small parking lot. The court said it was
reasonable to impound the automobile because it
would present a nuisance if it remained there
until the next day or longer. Krezen's automobile
was not parked in a small lot serving nearby
businesses and apartments, but in an airport park-
ing lot.

B

The lead opinion does not distinguish Fourth
Amendment decisions, which represent the clear
weight of authority,[46] stating that a person who is
arrested must be given the option of leaving a
legally parked automobile where it is, even when
valuables are visible. The "caretaking" rationale
for impoundment is inapposite when the person
arrested does not desire that the police safeguard
the person's property and accepts responsibility for
possible losses.

If the safeguarding-visible-valuables rationale
were to be adopted, an effort might be made to
extend that rationale to allow impoundment of
automobiles that contain expensive car stereo sys-
tems, telephones, or other expensive accessories. If
the value of the property is a factor, that rationale
might be extended to justify the impoundment of
all late-model automobiles.

Since the Krezen automobile could not have
been impounded as an incident to her arrest, I fail
to see the difference between Krezen's automobile
and an automobile that is parked for several days
in an airport parking lot by a citizen who is not
arrested—some persons leave their automobiles for
over a week, or several weeks, at airport parking
lots. Suppose the airport parking attendants who
periodically check automobiles parked for ex-

[46] See n 25 et seq., and accompanying text.

tended periods of time observe valuables in plain
view. No one has been arrested. The automobile is
legally parked. Do they have the obligation or
right to call the police; do the police have the
obligation or right to enter the automobile and
"safeguard" the valuables? Of course not. On what
basis then do the police have that obligation or
right or authority in the instant case? If it be said
that here Krezen was arrested and that that gave
rise to a "caretaking" responsibility for the safety
of her property, it would once again be relevant
that the "caretaking" rationale was developed in
respect to lawfully impounded automobiles.

It also is again relevant that the police have no
civil duty and are not subject to liability, under
*Ross,* for failing to safeguard a citizen's property.[47]

C

The concurring opinion states that while im-
poundment of the automobile was improper, the
impoundment of the purse was proper because the
police could not have reasonably left it there in
plain view, and could not be expected to hand it to
Krezen (presumably because it might contain a
weapon) without checking the contents, and upon
checking the contents they would have found the

---

[47] The lead opinion suggests that until this Court applies *Ross* in
this context and the United States Supreme Court further construes
42 USC 1983, "the asserted fear [by the police] of civil suit was hardly
unreasonable." (*Ante,* p 691, n 7.)

The United States Supreme Court has, however, yet to hold that
unfounded police fear of civil suit justifies a search or seizure under
the Fourth Amendment. The lead opinion implicitly decides neverthe-
less that a search or seizure is justified under the Fourth Amendment
on the basis of police fear of civil suit without regard to whether that
fear is correctly founded in law. Since the lead opinion would so
decide the Fourth Amendment question not decided by the United
States Supreme Court, it should, to the extent reversal of the Court of
Appeals is predicated on the fear of civil suit rationale, first also
address the state and federal law questions that it states are still
open.

incriminating evidence. Assuming for the moment that the police have the right or obligation to safeguard Krezen's property, there was another alternative. The police had demanded and obtained the keys to her automobile. The purse could have been put in the trunk of the automobile for safekeeping.

The purse was Krezen's property. It was her property that the police assert they were seeking to protect. Assuming that the police had some obligation or right in respect to safeguarding the purse because it was in plain view, they would have discharged that obligation by asking her if she wished to leave it there in plain view (running the risk of theft), or to have it placed in the trunk, or to have it returned to her after it had been searched for weapons. Having in mind that we are talking about safeguarding Krezen's property, she should have been given those options. The clear weight of authority is that arrested persons should be given the option of having the police "safeguard" their property or of leaving it at risk.

We would affirm the Court of Appeals.

CAVANAGH and ARCHER, JJ., concurred with LEVIN, J.